**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert Melvin DeFREITAS,**
**Defendant–Appellant.**

No. 88–5050.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 3, 1988.

Decided Jan. 9, 1989.

Wilfred Asquith Hearn, Jr., Beverly Hills, Cal. (James C. Clark, Land, Clark, Carroll & Mendelson, P.C., Alexandria, Va., on brief), for defendant-appellant.

John Thomas Martin, Asst. U.S. Atty. (Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before WIDENER, MURNAGHAN, and WILKINS, Circuit Judges.

MURNAGHAN, Circuit Judge:

Robert Melvin DeFreitas was indicted November 24, 1987 in the United States District Court for the Eastern District of Virginia for possession of cocaine base with intent to distribute,[1] possession of marijuana with intent to distribute,[2] and interstate travel in aid of racketeering.[3] On December 2, 1987, he entered not guilty pleas.

DeFreitas and a companion were confronted on their arrival at Washington National Airport on a flight from New York by a Drug Enforcement Administration special agent and officers of the District of Columbia Metropolitan police force and Arlington County police force, who were working for a DEA airport interdiction group. Upon a consent search, a bag in the possession of DeFreitas revealed among its contents marijuana and 14.8 grams of cocaine contained in 125 vials. As a consequence he was arrested.

On Friday, January 29, 1988, DeFreitas appeared before Chief District Judge Albert V. Bryan, Jr. for the entry of a change of plea pursuant to a plea agreement with the government. Uncertain whether DeFreitas was entering the plea freely and voluntarily,[4] after colloquy, Judge Bryan suspended the plea proceeding. He ruled that the trial would commence on Monday, February 1, 1988, as scheduled.

Then, on February 1, 1988, the hearing resumed before District Judge James C. Cacheris. DeFreitas remained represented

---

1. 21 U.S.C. § 841(a)(1).

2. 21 U.S.C. § 841(a)(1).

3. 18 U.S.C. § 1952.

4. DeFreitas said he thought the sentence could not exceed a maximum of five years. The offenses for which he was charged called for a minimum five year sentence.

by his original lawyer, though DeFreitas had expressed a desire for new representation and Judge Bryan had been so informed. The lawyer advised DeFreitas to accept the plea agreement, which involved a guilty plea, since by going to trial DeFreitas would face a multiple count conviction, which the lawyer allegedly predicted would result in a sentence of fifteen years or more. If convicted on all three counts, DeFreitas would have received a minimum mandatory prison sentence of five years, and could have received a sentence of up to 50 years.[5] In connection with the application for a change of plea, Judge Cacheris advised DeFreitas of the penalties which might be imposed and the fact that the change of plea would terminate DeFreitas' right to trial by jury. DeFreitas indicated that he understood the rights he would be abandoning, pled guilty to one count as required by the plea agreement, and stated that he agreed with a factual statement, recited in open court by the prosecutor, as to what had occurred.

On March 4, 1988, the date fixed for sentencing, DeFreitas, through new counsel, moved for leave to withdraw his guilty plea, as not freely and voluntarily made, claiming it was based on insufficient facts and had resulted from the ineffective assistance of counsel.[6] The motion for leave to withdraw the guilty plea was denied, as was a motion to dismiss, and sentencing was continued until March 18, 1988.

On that date, DeFreitas renewed his efforts to withdraw his guilty plea and sought reconsideration of the March 4, 1988 order denying withdrawal of the plea and dismissal of the indictment. The motion to withdraw the guilty plea contained a declaration from DeFreitas concerning advice given him by his former counsel.

The motion filed by DeFreitas to dismiss the indictment alleged that the grand jury

considered false testimony from DEA Special Agent William Dwyer. The government in reply stated that it possessed information which affected Dwyer's credibility, but the government in responding did not disclose the nature of that information. However, the response contained a statement that the information had been known to the former counsel of DeFreitas prior to the time of the guilty plea. On June 14, 1988, the government advised DeFreitas' new counsel of the information, which concerned Dwyer's treatment for alcoholism during the pendency of the proceedings.

On the basis of statements by DeFreitas made at the time of his guilty plea (February 1, 1988), the motion to withdraw the plea and the motion to dismiss were denied March 18, 1988, at which time the defendant was sentenced to a five year term of imprisonment and a supervised release term of four years. A $50.00 special assessment was also imposed.

Subsequently, DeFreitas sought to assert duress, coercion and lack of volition, induced by inaccurate statements of law and fact by his initial attorney. He sought a hearing, which was denied.

The thrust of DeFreitas' appeal focuses largely on the holdings in *United States v. Savage*, 561 F.2d 554 (4th Cir.1977) and *United States v. Strauss*, 563 F.2d 127 (4th Cir.1977). Those two cases held that, in the absence of prejudice to the government, withdrawal of a plea prior to sentencing would be automatic. No evidence existed in the instant case that the government would have been prejudiced by withdrawal of the plea and the effort it would need to expend in proceeding with a trial of the matter.

However, *United States v. Haley*, 784 F.2d 1218 (4th Cir.1986), introduced a modification of controlling importance here. That case construed a 1983 amendment of

---

5. Count I (possession of cocaine base with intent to distribute) carried a minimum prison term of five years and a maximum of 40. *See* 21 U.S.C. § 841(b)(1)(B). Count II (possession of 3½ pounds of marijuana with intent to distribute) carried a maximum prison term of five years. 21 U.S.C. § 841(b)(1)(D). Likewise, conviction on Count III (interstate travel in aid of

racketeering) could result in a maximum prison sentence of five years. 18 U.S.C. § 1952(a).

6. He claimed to be an innocent dupe of his travelling companions, ignorant of the contraband character of packages he was carrying for them.

Fed.R.Crim.P. 32(d) to require that, even in the absence of prejudice to the government, the defendant, to be permitted to withdraw a guilty plea, would have the burden of showing a "fair and just" reason for the withdrawal of the plea.

The attempt of DeFreitas in effect to read *United States v. Haley* out of existence does not convince us. We have considered the strength of the case against DeFreitas. He was caught with the goods and faced a strong possibility of conviction on all three counts, for which he could have received up to 50 years in prison. In light of that risk, his lawyer's recommending a guilty plea on one count, in the hope that Judge Bryan would impose the minimum sentence of five years in prison, cannot be characterized as misadvice.[7] The district court fulfilled the expectations of DeFreitas' lawyer by imposing the minimum prison term available for the offense charged in Count I. If DeFreitas had proceeded to trial he faced a strong likelihood of receiving a substantially longer prison sentence.

Other statements and advice of DeFreitas' lawyer, about which the defendant has complained, do not justify withdrawal of the guilty plea. DeFreitas may withdraw his plea only if he makes two showings: (1) that his counsel's performance "fell below an objective standard of reasonableness" and (2) that he was prejudiced in the sense that "there [was] a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 57, 59, 106 S.Ct. 366, 369, 370, 88 L.Ed.2d 203 (1985). DeFreitas has failed to bear that burden.

DeFreitas suffered no prejudice from the alleged failure of counsel to explain that the government had the burden of proving intent. Judge Cacheris, in taking the guilty plea, specifically told DeFreitas that the government must prove specific intent by the defendant to distribute the cocaine base. DeFreitas told Judge Cacheris that he understood the government's burden.

DeFreitas' counsel did not behave unreasonably in advising his client that jurors would be more likely to believe a law enforcement officer's testimony over a conflicting version of the facts by the defendant. DeFreitas would have been ill-served had he gone to trial with a naive expectation of how jurors would react to the conflicting testimony.

We cannot say that counsel performed unreasonably in merely neglecting to inform DeFreitas that he might be subject to deportation or denied re-entry into the United States because of his guilty plea. *See United States v. Yearwood*, 863 F.2d 6, 8 (4th Cir., 1988); *United States v. Santelises*, 509 F.2d 703, 704 (2d Cir.1975) (failure to inform client of possible deportation does not constitute ineffective assistance of counsel). A conviction or guilty plea may have many collateral consequences that will be adverse to a defendant. Although, ideally, counsel will inform the client of the possible consequences, failure to do so does not rise here to a level of unreasonableness. We need not decide whether an attorney's affirmative assurances to a client that he will not be deported would constitute ineffective assistance of counsel. *Cf. Downs–Morgan v. United States*, 765 F.2d 1534, 1540–41 (11th Cir.1985).

---

**7.** The case has produced a sharp conflict between simple to state but sometimes difficult to reconcile principles. On the one hand, one accused of crime should be allowed to act for himself and freely decide whether to plead guilty or to insist on a trial and a jury determination of guilt or innocence. On the other, rights of one accused should be zealously guarded against foolish and unwarrantably risky last minute intrusions by others and even, in extreme cases, by the accused himself.

Here we have a man caught with the goods and seeking to stand trial, not initially on apprehension in November, 1987, not on the tendering of a plea in February, 1988, but only in March of 1988 as the reality of the five-year sentencing loomed. He then thought of the old chestnut ("He didn't know it (a package of contraband) was loaded.").

The "I didn't know" defense, in light of the strength of the government's case, was forlorn. A not-guilty plea that would have been "fair and just" but was not made at the outset does not equate to fair and just withdrawal of a guilty plea when it is sought three months after arrest and only when the defendant faces the reality of sentencing.

Likewise, there is no merit in DeFreitas' allegation that his attorney acted unreasonably in informing him on Friday, January 29, 1988, that if he wished to obtain new counsel the replacement attorney would have to be ready to proceed to trial by Monday, February 1. Counsel was accurately relating to DeFreitas that Judge Bryan had said there would be no delays in the scheduled start of trial.

We also disagree that DeFreitas' counsel acted unreasonably in failing to move to suppress, as fruits of an illegal search, the cocaine base and marijuana found in the bag carried by DeFreitas. The attorney explained that, based on his understanding of the facts, DeFreitas consented to the search and thus no basis existed for a suppression motion.

The fact that DeFreitas' original counsel approached Judge Bryan with the information that he wanted to withdraw from the case because he feared perjury by DeFreitas if the case proceeded to trial, whether appropriate in the circumstances or not, was not a fair and just reason for withdrawal of the plea in view of the fact that Judge Bryan had suspended the plea proceedings, not acting on the request and leaving the case still in for trial. Moreover, it was Judge Cacheris, not Judge Bryan, who accepted the guilty plea.

To change one's mind about the relative benefits as between going to trial and accepting a plea agreement, in the circumstances of the instant case, by no means constitutes a fair and just reason. DeFreitas would be taking a very long shot not justified by the facts. The orderly procedure in our busy trial courts would be disrupted if a fair and just reason were found to lodge in all cases where the vagaries of a defendant were due only to a wish held by many if not all criminal defendants who do not relish the prospects of standing trial but also, in the end, decide to take an unreasonably long-shot gamble on beating by standing trial a fair, reasonable and just guilty plea.

Similarly, the absence of a hearing by the district court on the motion to dismiss because of Agent Dwyer's alcohol dependency is not a grounds for relief insofar as DeFreitas is concerned, since nothing has been alluded to which would justify such a hearing. A grand jury proceeding is an *ex parte* investigation, not an adversary hearing. *United States v. Calandra*, 414 U.S. 338, 343–44, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561 (1974). That is made more pertinent since there was a likelihood of waiver since DeFreitas' counsel was aware of Dwyer's condition at the time of entry of the guilty plea.

The judgment is, accordingly,

AFFIRMED.