917 F.2d 558
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Luis Aldama SANCHEZ, a/k/a Luis Aldama, a/k/a Luis Admada,
a/k/a Lewis Sanchez, Defendant-Appellant.
 No. 90-5751.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 5, 1990.
Decided Nov. 6, 1990.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, Chief District Judge. (CR-89-33-C)
 Charles Guy Monett, III, argued Charlotte, N.C., for appellant.
 Harry Thomas Church, Assistant United States Attorney, argued Charlotte, N.C., for appellee; Thomas J. Ashcraft, United States Attorney, Charlotte, N.C., on brief.
 W.D.N.C.
 AFFIRMED.
 Before DONALD RUSSELL and SPROUSE, Circuit Judges, and NICKERSON, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Luis Aldama Sanchez pleaded guilty to conspiracy to possess with intent to distribute in excess of 500 grams of cocaine and possession with the intent to distribute. Before sentencing, he attempted to withdraw these guilty pleas, but his motion was denied by the court. He now appeals this ruling as an abuse of the district court's discretion and also claims that clear error was committed in the determination of his sentence pursuant to the United States Sentencing Guidelines. Finding no merit in these issues, we affirm.
 
 I.
 
 2
 Sanchez and Nelda Lovette Parinas were spotted by North Carolina State Bureau of Investigation agents, engaged in narcotics interdiction surveillance, at the Charlotte Douglas International Airport on February 7, 1989. Although in the airport they remained at least ten feet apart, Sanchez and Parinas had arrived from Miami on the same flight and both were scheduled to continue on to Winston-Salem. Tipped off by very nervous behavior, the agents questioned and searched Sanchez, but found nothing. The agents next questioned and searched Parinas, who was pregnant, and found that she was carrying 998.46 grams of cocaine, strapped to her body.
 
 
 3
 During questioning by law enforcement officials after her arrest, Parinas admitted that she was a drug courier in a drug distribution ring run by Sanchez. Parinas told the officials that on at least 24 occasions she had transported cocaine from Miami to the Winston-Salem area. According to Parinas, Sanchez employed four other women as drug couriers, and the drugs were distributed through a number of nightclubs in the North Carolina triad area such as the Black Velvet Lounge. As for the specific incident in question, Sanchez strapped the cocaine to Parinas' body in a Miami motel, provided her with enough cash to buy a plane ticket to Winston-Salem, and promised to pay her $1,500 for transporting the drugs.
 
 
 4
 Based on this information, on March 9, 1989, the Federal Grand Jury for the Western District of North Carolina indicted Sanchez, charging him with one count of conspiracy to possess with the intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. Secs. 841(a)(1) and 846, and one count of possession with the intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. A superseding bill of indictment was returned on May 1, 1989, which corrected Sanchez's name but did not alter any of the charges.
 
 
 5
 Two weeks after his indictment, Sanchez was arrested in Winston-Salem. On October 16, 1989, he appeared before the United States District Court for the Western District of North Carolina and entered pleas of guilty to the two charges. At the plea taking, as well as at every other hearing, Sanchez was represented by his court-appointed counsel, Charles G. Monnett, III, and an interpreter furnished by the court, Raul Castanet; a federal magistrate had also appointed an interpreter, Ottilia Nesbit, on May 9, 1989, to assist counsel in preparing Sanchez's defense. The district court thoroughly covered the areas of inquiry as required by Rule 11, found that the guilty pleas were voluntary, found that a factual basis existed for the pleas, and accepted the pleas.
 
 
 6
 On November 24, 1989, Monnett moved to withdraw as Sanchez's counsel, but after a hearing on November 27, the motion was denied by the court. Soon thereafter, on December 5, Sanchez filed another motion, this time to withdraw his guilty plea. In this motion, Sanchez claimed that he spoke English "on a somewhat limited basis [and had] difficulty fully understanding how the federal criminal justice system operates," and that his guilty plea "was entered as a result of a mistake in communication between defense counsel and Defendant." In an order dated December 7, 1989, the court denied Sanchez's motion for a plea change, and on December 11 Sanchez was sentenced to 120 months' imprisonment, five years' supervised release, and a $100 special assessment.
 
 
 7
 Sanchez raises two issues on appeal. First, he claims that the district court abused its discretion when it denied his plea change motion. In addition, Sanchez believes that it was clear error for the court, when sentencing him pursuant to the Sentencing Guidelines, to find that he was "an organizer or leader of a criminal activity that involved five or more participants" and thus to increase his offense level by four levels.
 
 II.
 
 8
 Rule 32(d) of the Federal Rules of Criminal Procedure permits a court to allow the withdrawal of a guilty plea before sentencing "upon a showing by the defendant of any fair and just reason." The burden of showing this necessary "fair and just" reason for the withdrawal of the plea lies with the defendant. United States v. Haley, 784 F.2d 1218 (4th Cir.1986); United States v. DeFreitas, 865 F.2d 80 (4th Cir.1989).
 
 
 9
 It is clear in this case that the district court did not abuse its discretion in denying Sanchez's motion to withdraw his guilty plea. Sanchez has lived in this country for eleven years; he speaks a fair amount of English; he has been involved in previous criminal proceedings; and he was furnished with an interpreter both in court and while consulting with counsel over his defense preparation. During his initial plea-taking on October 16, Sanchez was thoroughly examined about his plea, and the court found it voluntarily given. Thus, the district court was entirely reasonable in finding that Sanchez's so-called "communication problems" did not meet the "fair and just" standard necessary to withdraw the plea.
 
 III.
 
 10
 The standard of review for Sentencing Guidelines issues on appeal is the clearly erroneous standard. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989). Sanchez claims that it was clear error for the district court to increase his offense level by four levels. As mandated by Section 3B1.1(a) of the Sentencing Guidelines, the court made this increase upon a finding that Sanchez was "an organizer or leader of a criminal activity that involved five or more participants." The court made this determination after listening to testimony presented on October 16 at the hearing to determine if there was a factual basis for Sanchez's guilty plea. At this hearing, Special Agent James King of the Drug Enforcement Agency testified that Nelda Parinas had stated to him that Sanchez was in charge of a cocaine distribution ring whereby at least five women, including Parinas, transported the drug from Miami to Winston-Salem where it was distributed through a number of nightclubs. While Sanchez was present at this hearing and answered questions concerning the voluntariness of his plea, he did not testify in order to rebut Parinas' statements.
 
 
 11
 Sanchez now objects to the veracity of Parinas' statements, but can only point to a couple of minor inconsistencies. After listening to all the evidence available, the district court came to the conclusion that Sanchez was indeed the leader of a distribution ring encompassing at least five persons. We can find no evidence which would call this determination into dispute.
 
 
 12
 Accordingly, the judgment of the district court is
 
 
 13
 AFFIRMED.