**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Dean A. LAMBEY, Defendant–Appellant.**

**No. 90–5619.**

United States Court of Appeals, Fourth Circuit.

Argued June 6, 1991.

Decided Nov. 18, 1991.

---

Conrad Charles Lewane, Sr., Richmond, Va., argued, for appellant.

Stephen Wiley Miller, Asst. U.S. Atty., Richmond, Va., argued (Henry E. Hudson, U.S. Atty., Richmond, Va., on brief), for appellee.

Before WIDENER, WILKINS, and NIEMEYER, Circuit Judges.

## OPINION

NIEMEYER, Circuit Judge:

Dean A. Lambey pled guilty to a two-count information charging him in count one with conspiracy to kidnap a minor in violation of 18 U.S.C. § 1201(c) (1988) and in count two with using an interstate computer facility to publish notices and advertisements to produce child pornography and to engage in sexually explicit conduct with minors in violation of 18 U.S.C. § 2251(c) (1988). Two weeks after the district court accepted the guilty plea following a Rule 11 hearing, but before sentencing, Lambey moved to withdraw the plea, contending that his attorney had erred in estimating his sentence and that, if had he been advised of the correct sentencing range, he would have demanded a trial. The district court denied the motion and sentenced Lambey to 360 months in prison on the conspiracy count and 120 months on the pornography count, the terms to run concurrently. Lambey appeals, arguing that the district court erred in refusing to grant his motion to withdraw his plea and that the court failed to advise him pursuant to Fed.R.Crim.P. 11(e)(2) that he could not withdraw his plea once it was given to the court. Finding no reversible error, we affirm.

## I

In February 1989, as part of an investigation to uncover child pornographers, Officer James Rodrigues, Jr., of the San Jose, California Police Department, placed an announcement with a computerized bulletin board service. In the announcement, Rodrigues, using an alias, identified himself as a bisexual pedophile and requested others with similar interests to contact him. Lambey responded to the announcement with his own announcement which stated, "Your message caught my interest. Think we may have something in common but need to explore more. Want to talk?? P.S. I like REAL youngsters!!" This began a protracted series of communications between Rodrigues and Lambey which revealed a plot by Lambey, and another individual, Daniel T. DePew, to buy or kidnap a male child, film him engaging in sexual activities, murder him on film, and sell copies of the "snuff film" to interested buyers. In the course of their communications through the computer network and later by phone and in person, Rodrigues and another undercover officer witnessed Lambey and DePew discussing and plotting the kidnapping, sexual assault and murder of a child. Lambey undertook specific responsibility for obtaining a rental van for the kidnapping and video equipment and tapes for the filming, and he suggested that his home in Richmond, Virginia, be used as the location for the crime. In August 1989, Lambey telephoned Officer Rodrigues to tell him that Lambey had spotted a child who appeared to be about thirteen years old riding his bicycle in an industrial area of Richmond. When Lambey indicated his plan that this child be the victim, Lambey was arrested.

With the advice of retained counsel, Lambey negotiated and agreed to a plea agreement. While discussing the plea agreement with Lambey, his counsel said that he "felt" the case would fall into the sentencing guidelines category providing for a sentence of 78–108 months, but that he "couldn't predict" the specific sentence Lambey would receive. The plea agreement itself expressly provided that no sentence had been determined and that any prediction was not binding on the court:

> The defendant is aware that his sentence has not yet been determined by the Court. He is also aware that any estimate of the probable sentencing range

that he may have received from counsel, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office, or the Court. Realizing the uncertainty in estimating what sentence he will ultimately receive, the defendant knowingly waives his right to appeal the sentence in exchange for the concessions made by the government in this agreement.

At a hearing conducted pursuant to Fed. R.Crim.P. 11, Lambey testified that he had read and "fully understood all of the terms of the plea agreement" and that it represented the entire understanding between him and the government. After advising Lambey of the nature of the two counts with which he was charged, the court advised him that he could receive a life sentence on count one and ten years on count two and that the sentences could be imposed consecutively. The court also stated, "that under guideline sentencing, no one can accurately predict what your sentence will be until such time as a presentence report has been made available to the court." Finally, the court received the statement of Lambey's attorney that the attorney, too, had advised Lambey of the unpredictability of his sentence "as recently as last evening."

After the Rule 11 hearing but prior to sentencing, Lambey's probation officer, after interviewing Lambey, tentatively "figured up" the points applicable for computing a sentencing guideline range. The probation officer advised Lambey that there was "a discrepancy between what [he] had tentatively figured and what [Lambey] was thinking." Lambey asked to speak with his lawyer and later moved to withdraw his plea. The district court denied the motion and subsequently sentenced Lambey to 360 months imprisonment on count one and a concurrent 120 months on count two.

## II

Lambey contends on appeal that his motion to withdraw his guilty plea should have been granted because if it were not for his attorney's erroneous estimate on the applicable sentencing guideline range, he would have gone to trial. Lambey also notes that the court failed, pursuant to Fed.R.Crim.P. 11(e)(2), to inform him that he could not withdraw his plea once rendered. We find neither of these arguments compelling.

■ Fed.R.Crim.P. 32(d), under which Lambey filed his motion to withdraw his plea, provides that the district court *may permit* the withdrawal of a plea before sentencing if the defendant demonstrates a "fair and just reason." The decision to permit the defendant to withdraw a plea is discretionary, and our review is limited to the question of whether the district court abused its discretion.

Rule 32(d) was amended in 1983 to impose a more definite standard on presentence motions to withdraw pleas. Before the amendment, withdrawals of pleas were freely allowed unless the " 'prosecution [had] been substantially prejudiced by reliance upon the defendant's plea.' " *United States v. Strauss,* 563 F.2d 127, 130 (4th Cir.1977) (quoting 2 C. Wright, Federal Practice and Procedure § 528, at 474–75 (1969)); *see also, United States v. Savage,* 561 F.2d 554, 556 (4th Cir.1977). The permissive approach of these cases was rejected by the changes to Rule 32(d) and the institution of more formal proceedings for accepting pleas under Rule 11. *See United States v. Haley,* 784 F.2d 1218 (4th Cir. 1986). The Advisory Notes on the 1983 amendment to Rule 32 provide, in connection with the changes:

Although that position [as stated in *Strauss* and *Savage*] may once have been sound, this is no longer the case in light of the recent revisions of Rule 11. Rule 11 now provides for the placing of plea agreements on the record, for full inquiry into the voluntariness of the plea, for detailed advice to the defendant concerning his rights and the consequences of his plea and a determination that the defendant understands these matters, and for the determination of the accuracy of the plea. Given the great care with which pleas are taken under this revised Rule 11, there is no reason to view pleas

so taken as merely "tentative," subject to withdrawal before sentence whenever the government cannot establish prejudice.

Advisory Committee Notes on the 1983 Amendment to Fed.R.Crim.P. 32, 18 U.S.C.App., p. 800 (1988).

 Accordingly, a fair and just reason for withdrawing a plea is one that essentially challenges either the fairness of the Rule 11 proceeding wherein the defendant tendered, and the court accepted, the plea or the fulfillment of a promise or condition emanating from the proceeding. What happens or is told the defendant before the hearing and induces the defendant not to change his plea at the hearing may be relevant to the analysis under Rule 32(d). If, however, at the Rule 11 hearing, the court specifically warns the defendant of possible results different from those he anticipated because of the prior event or advice, then the defendant bears a heavy burden when attempting to demonstrate that the prior event or advice should form the basis of a fair and just reason for a later withdrawal of his plea. If an appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice system can rely, it must be recognized to raise a strong presumption that the plea is final and binding.

 In the present case Lambey raises no objection to what occurred in the Rule 11 hearing or to the accuracy and adequacy of the information presented to him there. The reason he advances for withdrawing his guilty plea does not bear on whether he was in fact guilty. He has suggested no confusion about the nature of the charges, the defenses to them, or the applicability of his factual circumstances to satisfy a finding of guilt. Moreover, he suggests no error in the court's advice to him on what he could receive by way of a sentence. He contends simply that he believed he would receive a shorter sentence than that outlined by the court because of discussions with his attorney which took place prior to the Rule 11 proceeding. While we do not rule out the possibility that a misapprehension of the likely sentence, based on a

clear error in the advice provided to the defendant, can be a fair and just reason for withdrawal of a guilty plea if it is not corrected by the court at the Rule 11 hearing, we conclude that when information given by the court is said to conflict with earlier information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the dialogue between the court and defendant.

Thus, even though Lambey's discussion with his attorney may have led him to expect a particular sentence range, his statements at the Rule 11 hearing that he was aware that no sentence had yet been determined and that he could receive a sentence up to life imprisonment must be accepted. He testified he was aware that any predictions as to a sentence were not binding on the court, and he acknowledged that no promises or understandings, other than as contained in the plea agreement, induced his agreement.

 Statements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a sentencing court in accepting a plea "constitute a formidable barrier" to attacking the plea. *See Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S.Ct. 1621, 1628–29, 52 L.Ed.2d 136 (1977). When the basis for withdrawing a plea is the advice given by an attorney, the defendant must show that "counsel's performance 'fell below an objective standard of reasonableness'" and that but for the error, he would probably have insisted on a trial. *United States v. DeFreitas*, 865 F.2d 80, 82 (4th Cir.1989) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985)); *cf. Via v. Superintendent, Powhatan Correctional Ctr.*, 643 F.2d 167, 171 (4th Cir. 1981) (to attack plea, the defendant must show that the advice received was not "within the range of competence demanded of attorneys in criminal cases").

In the circumstances presented here, where the estimates of Lambey's attorney were announced as only estimates on which

Lambey could not rely and where the court clearly and correctly pointed out to Lambey at the Rule 11 proceeding that he could receive a life sentence, we conclude that the court did not abuse its discretion in rejecting his misapprehension as a fair and just reason and in refusing to permit Lambey to withdraw his guilty plea under Fed. R.Crim.P. 32(d). *See United States v. McHan,* 920 F.2d 244, 246–47 (4th Cir.1990) (no abuse of discretion to deny motion to withdraw guilty plea based on attorney's failure to inform defendant that the government might use the plea against him in a future case). Even if the attorney's estimate could be shown to have been made erroneously, an error in estimation is not the basis for setting aside a plea. *See, e.g., United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir.1989) (attorney's mistaken estimate of guideline range does not justify withdrawal of guilty pleas under Rule 32(d)).

### III

Lambey also argues that his sentence should be vacated because at the Rule 11 hearing the district court failed, pursuant to Fed.R.Crim.P. 11(e)(2), to inform him that once he pled guilty he could not withdraw the plea. His argument is based on the incorrect premise that Rule 11(e)(2) applies in these circumstances.

Rule 11(e)(2) reads in relevant part:

If the [plea] agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea.

Rule 11(e)(1)(B), to which Rule 11(e)(2) refers, describes a plea agreement that includes an obligation of the government to make a sentencing recommendation or not to oppose a sentencing request of the defendant. Rule 11(e)(1) reads:

(1) The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo con-

tendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

\* \* \* \* \* \*

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court. . . .

As the Advisory Notes to the 1979 amendment to Rule 11(e)(2) illustrate, a Rule 11(e)(1)(B) type agreement requires the special warning by the court whereas other types of agreements do not: "Because a type (B) agreement is distinguishable from the others in that it involves only a recommendation or request not binding upon the court, it is important that the defendant be aware that this is the nature of the agreement into which he has entered." Advisory Committee Notes on the 1979 Amendment to Fed.R.Crim.P. 11, 18 U.S.C.App., p. 745 (1988). Since there was no agreement by the government in this case to recommend a specific sentence or to refrain from opposing a sentence recommendation by Lambey, Rule 11(e)(2) was not applicable and there was no requirement that the district court inform Lambey that once he pled guilty he could not withdraw the plea.

For the reasons stated, we affirm the district court's denial of Lambey's motion to withdraw his guilty plea and accordingly affirm Lambey's sentence.

AFFIRMED.

WIDENER, Circuit Judge, dissenting:

Because I am of opinion that the facts surrounding Lambey's entry and attempted withdrawal of his guilty plea constitute a "fair and just reason" for such withdrawal, and that under these circumstances the district court abused its discretion in denying the motion under Fed.R.Crim.P. 32(d), I respectfully dissent.

It is undisputed that Lambey's trial counsel, while advising him to accept the government's offer of a plea agreement,

badly misstated the range of years of confinement to prison to which Lambey would be subject under the Sentencing Guidelines. Lambey's counsel erroneously informed him that a plea of guilty under the agreement would result in a sentence of between 78 and 108 months. In fact, Lambey's Guideline range of sentences was from 360 months to life, and he ultimately was sentenced to serve 360 months in prison, a term over three times longer than his counsel's estimated maximum.

Lambey first became aware of his attorney's error during a presentence interview with his probation officer, on December 4, 1989, five days after his guilty plea was entered, but before he was sentenced. Upon learning that he faced a substantially longer prison term than his attorney had led him to believe, Lambey immediately dispatched letters to his attorney and to the district court asking that he be allowed to withdraw his guilty plea and be tried by a jury. In his letter to the court Lambey stated that his guilty pleas were "ill advised, and made at a time of great stress." Lambey's counsel followed up this letter by filing formal motions to withdraw the pleas. These motions fully explained the deficiencies of his counsel's earlier advice and the circumstances under which the pleas of guilty were entered. Prior to denying Lambey's motions and imposing sentence, the district court received testimony and heard argument regarding his counsel's erroneous advice. Lambey himself testified unequivocally that he would not have waived his right to trial by jury had he received proper advice regarding the range of prison terms that he faced. While the testimony of Lambey, of course, might be discounted, the other facts which are undisputed can not, and the district court was thus fully aware before sentencing of the circumstances surrounding Lambey's guilty pleas and of his desire to be tried by a jury.[1]

My objection to the majority decision lies in the application of the standard governing motions to withdraw pleas of guilty. Federal Rule of Criminal Procedure 32(d) allows the district court to permit a defendant to withdraw a guilty plea before sentence is imposed "upon a showing by the defendant of any fair and just reason." If the defendant can establish such a reason, the degree to which the government would be prejudiced by the withdrawal of the plea becomes relevant to the district court's decision as to whether to allow the withdrawal. See *United States v. Pitino*, 887 F.2d 42, 48–49 (4th Cir.1989); *United States v. Haley*, 784 F.2d 1218, 1219 (4th Cir.1986). When a defendant asserts poor or erroneous advice of his attorney as his reason for withdrawal, he must show that his attorney's performance was below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's error, he would have pleaded not guilty and insisted on going to trial. See *United States v. DeFreitas*, 865 F.2d 80, 82 (4th Cir.1989). In this case I am convinced that Lambey established a fair and just reason for withdrawing his plea. I have no doubt that his counsel's very incorrect reading of the Sentencing Guidelines falls short of an objective standard of reasonableness. Further, his request to withdraw his guilty plea was promptly made, *before sentencing,* so it cannot be gainsaid that he did want a trial by jury. This is not the all too frequent case of an attempt to withdraw a guilty plea after sentencing.

When a defendant establishes a fair and just reason for withdrawal of the plea, it is proper to examine the extent to which the government would be prejudiced by the withdrawal. In this case the government would not have been prejudiced in the least. Lambey entered his guilty plea on

---

1. On December 29, 1989, nine days after the receipt of the first letter, the district court received from Lambey a second letter dated December 21, 1989, in which he stated that he had "no desire to withdraw [his] plea at this time." However, this letter is of no significant consequence in my view of this case. No one other than the district court received a copy of the letter or was even aware of its existence until the day of the sentencing hearing, February 13, 1990. Notwithstanding Lambey's second letter to the court, his motion to withdraw his plea was properly made or renewed by formal motion on February 12, 1990. The import of the February 12th motion cannot be misunderstood.

November 29, 1989, and his motion to withdraw the plea was first received by the district court on December 20, 1989. The government's ability to prosecute Lambey on the charges would not have been impaired in any way by allowing this withdrawal only a matter of weeks after the signing of the plea agreement. On the facts of this case, there simply was no valid reason for denying Lambey's motion.

In the ordinary case in which a defendant attempts to withdraw a plea of guilty on the grounds that he was mistaken as to the consequences of the plea or of the legal rights waived by the plea, the fact that the plea was accepted only after a properly conducted Rule 11 hearing may well foreclose withdrawal of the plea. I submit, however, that this is far from an ordinary case and is one in which the effect of the Rule 11 colloquy should not be so broad.

As I have already suggested, this is not a case in which the defendant's attorney made only a minor error in predicting his client's exact sentence under the Guidelines. Rather, Lambey faced a range of sentences that at a minimum was three times greater than his attorney had informed him. When an attorney's advice falls below an objective standard of reasonableness, as I would hold occurred here, I do not believe that the Rule 11 colloquy should prevent the defendant from withdrawing his plea of guilty and asserting his right to a jury trial.

The majority insists that the district court's statements to Lambey at the Rule 11 hearing sufficiently warned him that his counsel's estimates were not to be relied upon. P. 137. While it is true that the

district court in a general manner informed Lambey that "no one ... [could] accurately predict" his sentence, the court simply did not inquire with any specificity into whether Lambey's counsel had made any estimates. It is also incorrect to state that the "estimates of Lambey's attorney were announced as only estimates on which Lambey could not rely." P. 138. A review of the transcript, vol. 2, p. 115, indicates that the district judge did not mention the estimates of Lambey's attorney, neither did he state that any such estimate could not be relied upon.[2] Lambey later testified, and his testimony is corroborated by a document that was part of the sentencing table given to him by his attorney, plaintiff's ex. II, that his attorney erroneously had informed him that the maximum sentence of 360 months to life did not apply to him, and consequently Lambey was under the impression at the Rule 11 hearing that the court's admonition regarding that sentence did not apply to him. (Tr. Vol. 3, p. 20) When an attorney's advice was so incorrect, as here, as to distort the defendant's entire understanding of the significance of the Rule 11 colloquy, I would hold that the defendant is not thereby barred from withdrawing his plea.

It is of course true that the 1983 amendments to Fed.R.Crim.P. 32(d) have made the withdrawal of guilty pleas more difficult. However, this court wisely has heretofore avoided sweeping holdings that create unnecessarily inflexible rules regarding the circumstances under which a guilty plea may be withdrawn. Our desire to impart finality to criminal proceedings should not outweigh a defendant's right to

**2.** The plea agreement itself, which Lambey signed, contains only warnings similar in their generality to those given by the district judge from the bench. That document provides, in relevant part:

The defendant is aware that his sentence has not yet been determined by the Court. He is also aware that any estimate of the probable sentencing range that he may have received from counsel, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office, or the Court.

This language was obviously insufficient to put Lambey on notice that specific estimates provid-

ed him by his attorney were grossly understated. This paragraph states only that estimates are not binding on the government, the probation officer, or the court, and makes no attempt to suggest that such estimates cannot be relied upon by the defendant in deciding whether to waive his right to trial and plead guilty. The insertion of such boilerplate language is not a proper substitute for a searching inquiry by the district judge, when called upon as here, as to whether the defendant is laboring under a grave misunderstanding regarding the potential punishment that he faces.

be tried by a jury when that right was waived under circumstances such as those present here.

Lambey had no one to turn to except his attorney, unless the probation officer is counted. The attorney admittedly gave Lambey incorrect advice of great magnitude, which mistake obviously was caught by the probation officer. Immediately upon being advised of the mistake, Lambey asked to have his plea withdrawn. This act and the documentary corroboration of the mistake of his attorney established beyond a doubt his good faith. Moreover, there was nothing else that Lambey could do at the time except seek to withdraw his plea. The effect of the majority decision is such that advice from the court as to the length of the maximum sentence "[a]nd that under guideline sentencing, no one can accurately predict what your sentence will be until such time as a presentence report has been made available to the court" (Tr. Vol. 2, p. 2) is to impose a per se rule, an impenetrable shield behind which the government can hide, and avoid even the great and admitted mistake of an attorney such as that which occurred here.

In my opinion this proceeding was so lacking in fairness that the guilty plea must be set aside. There is no doubt that but for the error of his attorney Lambey "would not have pleaded guilty and would have insisted on going to trial." *United States v. DeFreitas*, 865 F.2d 80, 82 (4th Cir.1989). Indeed Lambey attempted to do just that.

The Sentencing Guidelines, to put it mildly, have revolutionized sentencing. To construe them, however, as the majority does in this case, is to withdraw from the proceeding the element of fairness. I do not think they are meant to be construed, and neither is Criminal Rule 11 nor 32, to uphold an iron clad requirement of pleading blind in the face of admittedly grossly erroneous advice of an attorney. That is the result obtained here.

Accordingly, I would vacate the judgment of the district court and remand for entry of a new plea to the offenses charged.