991 F.2d 791
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Jeromi Horns BAZUAYE, a/k/a Joromi Bazuaye, a/k/a Jeromi
Duzuaye, a/k/a Joromi Duzuaye, Defendant-Appellant.
 No. 92-5315.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 5, 1993
Decided: April 7, 1993
Order Amending Opinion and Denying Rehearing
May 3, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CR-91-508-A)
 Argued: David Scott Bracken, Law Offices of John T. Donelan, Alexandria, Virginia, for Appellant.
 Thomas Higgins McQuillan, Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 On Brief: Richard Cullen, United States Attorney, Alexandria, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before WIDENER and HAMILTON, Circuit Judges, and POTTER, United States District Judge for the Western District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 In this appeal, the principal contention of the appellant, Jeromi Horns Bazuaye, is that the district court abused its discretion in determining that he did not demonstrate a "fair and just reason" for withdrawal of his guilty plea to possessing, with the intent to defraud, fifteen or more counterfeit or unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3). Bazuaye also attacks his sentence on numerous grounds. Finding that the district court did not abuse its discretion in refusing to vacate Bazuaye's guilty plea, but erred in two minor respects concerning Bazuaye's sentence, we affirm in part, vacate in part, and remand with instructions.
 
 
 2
 * On October 16, 1991, Bazuaye was arrested by Secret Service agents in the District of Columbia. On that date, Secret Service agents followed Bazuaye's automobile from his home in Arlington, Virginia, to the District of Columbia and arrested him after his vehicle was stopped. A search of the automobile pursuant to a warrant revealed seven counterfeit or unauthorized credit cards. During a later search of Bazuaye's residence, the Secret Service agents discovered an additional counterfeit or unauthorized credit card, and two notebooks containing at least seven counterfeit or unauthorized credit card numbers.
 
 
 3
 On December 12, 1991, a federal grand jury returned a twelvecount indictment against Bazuaye charging violations of numerous federal statutes. On February 21, 1992, pursuant to a plea agreement, Bazuaye pleaded guilty to count three of the indictment: possessing, with the intent to defraud, fifteen or more counterfeit or unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3).
 
 
 4
 At the Fed. R. Crim. Proc. 11 hearing on February 21, 1992, a boilerplate colloquy took place in which Bazuaye acknowledged, among other things, that:
 
 
 5
 (a) he received a copy of the indictment and had gone over it with his attorney;
 
 
 6
 (b) he understood the charges pending against him;
 
 
 7
 (c) he told his attorney all the facts about the case;
 
 
 8
 (d) his attorney had discussed with him the nature of the charge and any possible defense he might have to the charge;
 
 
 9
 (e) he was satisfied with the representation of his attorney;
 
 
 10
 (f) if his plea were accepted, he could be imprisoned for as long as ten years or pay a fine of up to $250,000 or both;
 
 
 11
 (g) he could choose to plead not guilty and go to trial;
 
 
 12
 (h) other than the agreement as set out in the plea agreement, no officer of the United States or member of the United States Attorney's Office or any other government agent made any promises or suggestions to him that by pleading guilty he would receive a lighter sentence;
 
 
 13
 (i) no person made any promises or threats to him to induce him to plead guilty;
 
 
 14
 (j) the written statement of facts signed by him and his attorney reflected his conduct; and
 
 
 15
 (k) he made no claim of innocence with respect to count three of the indictment.
 
 
 16
 Joint Appendix (J.A.) at 36-42. Counsel for Bazuaye also stated that in his opinion Bazuaye's guilty plea was voluntarily and understandingly made. Thereafter, the district court found that the guilty plea was voluntarily and understandingly made, accepted the guilty plea, and found the defendant guilty as charged in count three of the indictment.
 
 
 17
 Approximately eight weeks later, Bazuaye filed a pro se motion to withdraw his guilty plea and a pro se motion to vacate his guilty plea, conviction and dismissal of charges. In support of his motions, Bazuaye, among other things, alleged that: (a) his counsel, Robert Stanley Powell, informed him that the Sentencing Guidelines provided for a sentence of ten to sixteen months, but assured him that he would receive a six month sentence if he cooperated with the government; (b) Powell told him that the government could only use the factual basis of count three for sentencing purposes (approximately $15,000); (c) he was threatened by an Assistant United States Attorney, Thomas McQuillan, with the possibility of more charges and at least ten years in prison if he did not sign the plea agreement; (d) he was intimidated, coerced, and threatened by his own counsel and the Assistant United States Attorney to sign the plea agreement; and (e) without evidentiary support, he was not guilty.
 
 
 18
 The government filed a response which read in part:
 
 
 19
 The government flatly denies BAZUAYE'S contention that he was threatened during the meeting of January 29, 1992. At the time of the meeting, BAZUAYE was charged in a 12 count indictment. Counsel for BAZUAYE advised the government that the defendant was interested in pleading guilty, but did not agree with the terms of a proposed plea agreement. The meeting, which BAZUAYE agreed to, was held in the presence of then-counsel, Charles G. Aschmann, Jr. The purpose of the meeting was to discuss the terms and effect of the contemplated plea agreement. No threats were made, and, importantly, the defendant never did enter into the plea agreement discussed at that meeting.
 
 
 20
 J.A. at 356.
 
 
 21
 At the sentencing hearing, the district court denied Bazuaye's motions without an evidentiary hearing and sentenced Bazuaye to thirty-six months' imprisonment, five years' supervised release, and a $50 special assessment. The district court's judgment, however, reflected a sentence of thirty-seven months. Bazuaye noted a timely appeal.
 
 II
 
 22
 We review the district court's denial of a motion to withdraw a guilty plea under Fed. R. Crim. Proc. 32(d) for an abuse of discretion. United States v. Craig, No. 92-5145, slip op. at 5 (4th Cir. February 8, 1993) (citing United States v. Moore, 931 F.2d 245, 248 (4th Cir.), cert. denied, 112 S. Ct. 171 (1991)). To prevail on appeal, Bazuaye must demonstrate that "the district court abused its discretion in determining that [he] had not shown 'a fair and just reason' for being allowed to withdraw his guilty plea...." Craig, slip op. at 5 (citing Moore, 931 F.2d at 248)). In Moore, we noted several factors that may be considered in determining whether a defendant has met his burden under Rule 32(d):
 
 
 23
 (1)Whether the defendant has offered credible evidence that his plea was not knowing or voluntary;
 
 
 24
 (2)Whether the defendant has credibly asserted his legal innocence;
 
 
 25
 (3)Whether there has been a delay between the entering of the plea and the filing of the motion;
 
 
 26
 (4)Whether the defendant has had close assistance of competent counsel;
 
 
 27
 (5)Whether withdrawal will cause prejudice to the government; and
 
 
 28
 (6)Whether withdrawal will inconvenience the district court or waste judicial resources.
 
 
 29
 Id., 931 F.2d at 248 (citations omitted).
 
 
 30
 Initially, we note that factors (2) and (3) militate against withdrawal. Beyond his bald allegation, Bazuaye has not credibly asserted his innocence, and eight weeks passed between the time of his guilty plea and the filing of the motion to withdraw, a span which the court in Craig found to be excessive. Craig, slip op. at 5. Because of a dearth of evidence in the record, we follow the analysis in Craig and treat factors (5) and (6) as neutral for the purposes of our discussion. Id., slip op. at 6.
 
 
 31
 Bazuaye argues that under factors (1) and (4) he has demonstrated "a fair and just reason." Unfortunately for Bazuaye, as to those factors, they also weigh decidedly in the government's favor. Bazuaye argues that his plea was not: (a) voluntary because it was the product of threats and coercion by his own defense counsel and by the government; and (b) knowingly made because it was based on ineffective assistance of counsel.
 
 
 32
 With respect to the voluntariness of the plea, Bazuaye directs our attention to his allegation that his counsel and the Assistant United States Attorney coerced him into accepting the plea. Putting aside the obvious overlap between this argument and Bazuaye's argument on the ineffective assistance of counsel, we note that Bazuaye stated in his plea agreement that his plea was voluntary and no threats were made against him. The district court confirmed these facts during the Rule 11 colloquy. In addition, counsel for Bazuaye proffered to the district court that in his opinion Bazuaye's plea was voluntarily and understandably made. Finally, Bazuaye stated that he was satisfied with his counsel's services.
 
 
 33
 In United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) (en banc), we noted: "Statements of fact by a defendant in a Rule 11 proceeding may not ordinarily be repudiated...." In light of the statements of Bazuaye and his counsel at the Rule 11 proceeding, the baldness of Bazuaye's coercion allegations and the government's response to those allegations, and Lambey 's formidable barrier, factor (1) militates heavily against withdrawal.
 
 
 34
 Under factor (4), to constitute a "fair and just reason" for withdrawal, Bazuaye bears the burden of demonstrating: (a) that his counsel's performance fell below an objective standard of reasonableness; and (b) prejudice, i.e., that there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and insisted on going to trial. United States v. DeFreitas, 865 F.2d 80, 82 (4th Cir. 1989). The performance prong need not be addressed if the defendant fails to demonstrate prejudice. Craig, slip op. at 7 (citation omitted). Bazuaye asserts that counsel was ineffective for two reasons: (a) his counsel assured him that he would ultimately receive six months in jail; and (b) failed to advise him that he may be accountable for conduct outside the conduct supporting count three of the indictment.
 
 
 35
 We addressed a similar situation of "mis-advice" in Craig. There, as part of his ineffective assistance argument, the defendant relied upon an allegation of erroneous advice about sentencing possibilities. The defendant contended his counsel incorrectly inflated the sentencing possibility under the first plea agreement (counsel estimated a sentence of twelve to fourteen years) to induce him to accept a second plea agreement. In the Rule 11 proceeding, the district court informed the defendant that he could receive up to twenty years in jail. The defendant ultimately received a sentence of six and one-half years. We concluded that the defendant failed to meet the prejudice prong because the defendant "ultimately entered his plea based upon risk information given him by the sentencing court, not his counsel...." Craig, slip op. at 8.
 
 
 36
 Our case is very similar to Craig. For the moment, we accept as fact that Bazuaye was informed by his counsel that he would probably receive a sentence of six months. The district court informed Bazuaye that he could be sentenced to ten years' imprisonment and Bazuaye ultimately received a sentence of thirty-six months. Consequently, under Craig, we are compelled to conclude that Bazuaye has failed to meet the prejudice prong because he "ultimately entered his plea based upon risk information given him by the sentencing court, not his counsel...." Id.[1]
 
 III
 
 37
 Bazuaye also raises a number of assignments of error concerning his sentence, only a few of which merit discussion. At his sentencing hearing, the district court imposed, inter alia, a sentence of thirty-six months' imprisonment. J.A.--403. However, the district court's written findings and reasons for imposition of sentence, J.A.--405-06, and its judgment in a criminal case, J.A.--408-10, state that a thirty-seven months' term of imprisonment was imposed. On this basis, Bazuaye requests that his case be remanded for a new sentencing hearing. By order filed November 24, 1992, the district court, in denying the government's Fed.R.Cr.Proc. 36 motion for correction of a clerical mistake in the sentence, stated "that the transcript of the [sentencing] hearing [thirty-six months' imprisonment] is in error and that a 37 month sentence was imposed and was the sentence the court announced in open court." Here the district court has properly corrected the written judgment so that it conforms with its oral pronouncement at sentencing. "To the extent of any conflict between [the] written order and the oral sentence, the latter is controlling." United States v. Morse, 344 F.2d 27, 29 n.1 (4th Cir. 1965); United States v. Villano, 816 F.2d 1448, 1450 (10th Cir. 1987). Accordingly, as the district court record now reflects Bazuaye was sentenced to a term of imprisonment for thirty-seven months.
 
 
 38
 Because Bazuaye was convicted of a violation of 18 U.S.C. § 1029(a)(3), the term of supervised release that the district court was required to impose should not have exceeded three years. U.S.S.G. § 5D1.2(b)(2) (period of supervised release for Class C felony shall be at least two, but no more than three years). Accordingly, we vacate the term of supervised release and remand with instructions to determine the appropriate term of supervised release.[2]
 
 IV
 
 39
 For the reasons stated herein, the judgment of the district court is affirmed in part, vacated in part, and remanded with instructions.
 
 
 40
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS
 
 ORDER
 
 41
 May 3, 1993.
 
 
 42
 The Court amends its opinion, filed april 7, 1993, as follows:
 
 
 43
 On page 8, the first paragraph of Part III is deleted and a new paragraph is inserted as follows:
 
 
 44
 [Editor's Note: Amendment incorporated in text of opinion.]
 
 
 45
 On page 8, the second full paragraph under Part III remains unchanged. On remand, the district court must determine the appropriate term of supervised release.
 
 
 46
 Except as specifically modified and revised hereby, the decision of the court is specifically reaffirmed.
 
 
 47
 Bazuaye's motion for extension of time to file petition for rehearing is granted until May 10, 1993.
 
 
 48
 The government's petition for rehearing, filed April 21, 1993, is denied.
 
 
 49
 Entered with the concurrence of Judge Widener and Judge Potter (USDJ/WDNC).
 
 
 
 [1]
 We find no merit to Bazuaye's contention that the district court should have permitted him to withdraw his guilty plea pursuant to U.S.S.G. § 6B1.2. Bazuaye also contends that the district court should have, at the very least, granted him an evidentiary hearing. We disagree. The granting of an evidentiary hearing is not automatic, but rather rests largely with the dis cretion of the district court, although "evidentiary hearings should be liberally granted prior to sentencing." Moore, 931 F.2d at 248 (quoting United States v. Fountain, 777 F.2d 351, 358 (7th Cir. 1985)). We believe the evidence in the record amply supports the district court's decision to deny Bazuaye an evidentiary hearing
 
 
 [2]
 We have reviewed Bazuaye's remaining assignments of error concerning his sentence and find them to be without merit