7 F.3d 227
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Brian William FELLS, a/k/a Bryan William Fells, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ernest Harvey FELLS, Defendant-Appellant.
 No. 92-5574.
 No. 92-5575.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 5, 1993.
Decided: September 17, 1993.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk.
 ARGUED: Moody E. Stallings, Jr., Stallings & Richardson, for Appellants.
 Gregory Allan Gruber, Special Assistant United States Attorney, for Appellee.
 ON BRIEF: Gregory K. Pugh, Stallings & Richardson, for Appellants.
 Richard Cullen, United States Attorney, Mary Ann Snow, Assistant United States Attorney, for Appellee.
 E.D.Va.
 AFFIRMED
 Before WIDENER and HAMILTON, Circuit Judges, and POTTER, United States District Judge for the Western District of North Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 The defendants, Brian and Ernest Fells, pleaded guilty to one charge of conspiracy to make, utter, and deal counterfeit United States currency in violation of 18 U.S.C. § 371. Eleven days later the Fells filed a joint pro se motion to withdraw their guilty pleas. Their rationale for withdrawal was based on an allegation that they were not made fully aware by their court-appointed counsel of a possible Fourth Amendment defense they may have had due to a search of their leased premises by Secret Service agents. On July 30, 1992, an evidentiary hearing was held pursuant to their motion. The motion was denied by the district court and this appeal followed. We affirm.
 
 
 2
 The defendants rented the premises at 4565 Virginia Beach Boulevard, Suite 208-A, from the Commonwealth Building Company.[1]
 
 
 3
 Their lease agreement provided that rent was due by the first of every month. It also provided that if they were to default on a rent payment, the landlord was entitled to terminate the lease if the payment was not received within five days of written notice. Upon termination, the lease provided that the landlord could enter and take possession of the premises.
 
 
 4
 On August 15, 1991, Charles Moses, the property manager of the Fells's leased premises, determined that the Fells were behind on their August rent. After receiving phone calls from a merchant concerned about the defendants' nonpayment on a purchased copy machine, Moses entered and inspected the premises as permitted by the lease. He noted that the premises were dirty, that some of the windows had been taped up, and that an assortment of month-old unclaimed mail lay just inside the door. Moses concluded that the Fells had abandoned the property. That day, written notice by certified mail was sent to the defendants, notifying them of their lease's pending termination unless the rent payment was received by August 20.
 
 
 5
 Moses also noticed during his entry that there were clippings with yellow and green tinted ink and an unusual type of paper in the clippings. Moses was himself a printer and he suspected counterfeiting activity. He called the Secret Service on August 15th, who met with him on August 16 after returning his call earlier in the day. No entry onto the premises was made at that time, but Moses informed the agents that he was going to reenter the premises on August 20 as the effective date of the termination of the lease. Moses testified at the evidentiary hearing that it was his belief the lease allowed him to enter and take possession of the property and that he was not influenced by federal agents to do so, nor had he been influenced to send notice of the termination of the lease as that had been done before he talked with the Secret Service.
 
 
 6
 On August 19, one day before the date of termination, Darren James, who had a power of attorney document from the defendants, contacted Moses seeking entry onto the premises. Moses and the Secret Service agents met with James that day. James offered to pay up the rent with his personal out-of-state check and remove the Fells's property from the premises. Moses told him that he could not let James remove any property until the check cleared the bank in three to five days. James told Moses that he could not wait that long and left.
 
 
 7
 On August 20, five days after sending written notice, Moses, accompanied by Secret Service agents and a locksmith, reentered the premises. Upon instruction by Moses, the locksmith opened a deadbolted inner office door and a locked cabinet. Moses invited the Secret Service agents into the suite to determine the contents of the cabinet after it was unlocked.
 
 
 8
 The defendants now argue that this search was unconstitutional and that all of the evidence recovered should have been suppressed. They argue further that their court-appointed counsel failed to fully pursue the merits of this search as violative of their Fourth Amendment rights and that accordingly their guilty pleas should be vacated. Essentially, the defendants are asserting that their respective attorneys were ineffective for failing to fully pursue and inform them of a valid constitutional claim, with the result that they did not make a knowing and intelligent guilty plea.
 
 
 9
 We note that a comprehensive Fed. R. Crim. P. 11 hearing was given to each of these defendants by the district court when they made their pleas. To withdraw a guilty plea, a defendant has the burden to show that there is a "fair and just" reason to do so. Fed. R. Crim. P. 32(d). When the basis for a defendant's request to withdraw a guilty plea is poor advice from his attorney, he must show that his attorney's performance was below an objective standard of reasonableness and that there was a reasonable probability that, but for counsel's error, he would have pleaded not guilty and insisted on going to trial. United States v. DeFreitas, 865 F.2d 80, 82 (4th Cir. 1989). See also United States v. Moore, 931 F.2d 245, 248 (4th Cir.), cert. denied, 60 U.S.L.W. 3261 (1991). A refusal by the district court to vacate a defendant's guilty plea is reviewed for abuse of discretion, United States v. Lambey, 974 F.2d 1389, 1393 (4th Cir. 1991) (en banc).
 
 
 10
 Accordingly, we first look to the performance of the Fells's attorneys. The record reflects that the particular Fourth Amendment claim raised by the defendants on this appeal was thoroughly discussed by the Fells and their court-appointed counsel.[2] Their attorneys each testified that they researched this issue, discussed it with their respective clients, and advised them that the there best course was to plead guilty. Although the defendants' testimony on this issue conflicted with their respective attorney's testimony, the district court specifically found that each defendant's credibility "was rated zero." We are of opinion that the facts do not support the defendants' assertions and that their attorneys' performance was quite reasonable.
 
 
 11
 The district court also found as a matter of law that the Fells's unconstitutional search claim was without merit. This, of course, supported the fact that the attorneys' advice was sound. The district court, relying on the Supreme Court's decision in Illinois v. Rodriguez, 497 U.S. 177 (1990), found that the Secret Service agents reasonably and in good faith relied on the assertions made by the property manager concerning his legal right of entry.[3] The evidence here supports that finding. The agents were shown the lease and told of the lease termination letter. They were invited by Moses to enter the premises in question on the day the lease was to be terminated, five days after sending written notice. Moses also testified that it was his intention to enter with or without the Secret Service agents on August 20, and that his understanding of the lease agreement allowed him to legally do so. We are of opinion that the district court was not clearly erroneous when it found that the Secret Service agents reasonably and in good faith relied on Moses's statements and apparent authority, 4 and that therefore, the Fells's attorneys did not give them bad advice concerning this Fourth Amendment claim.
 
 
 12
 In sum, we are of opinion that the district court did not abuse its discretion when it refused to allow the Fells to withdraw their guilty pleas. The Fells's were provided a comprehensive Rule 11 hearing, their court-appointed attorneys performed reasonably, and finally, they never received bad advice concerning their underlying Fourth Amendment claim.
 
 
 13
 The judgments appealed from are accordingly
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 The lease is to American Image Makers as tenant, which is referred to in the singular or as "it" throughout the lease, and was signed by Ernest Fells as President and Brian Fells as Vice President. If American Image Makers was a corporation, for example, the Fells may not have had any kind of expectation of privacy in the premises in any event. They have been treated as individuals in this case, however, and we will continue that usage
 
 
 [2]
 Subsequent to their guilty pleas, the defendants retained a new attorney and refused to talk to their prior court-appointed attorneys. The district court did not formally relieve either of the defendant's courtappointed attorneys, but because they were called by the court as witnesses, allowed their retained counsel an active role at the evidentiary hearing
 
 
 [3]
 In Rodriquez, the Supreme Court held that an agent's good faith, reasonable belief in a third party's authority to consent to a search will not result in suppression of the recovered evidence. 497 U.S. at 182-89. The fact that the contraband in the instant case was discovered in a locked cabinet opened by a locksmith at the order of the property manager does not change the analysis or result. See United States v. Kinney, 953 F.2d 863, 866-67 (4th Cir.), cert. denied, 60 U.S.L.W. 3842 (U.S. 1992) (applying Rodriquez to a locked closet)
 
 
 [4]
 Moses, the locksmith, and the Secret Service agents entered the premises at 10:00 a.m. on August 20. The Fells argue that five days had not passed from the time the default notice letter was sent to the time of entry, and therefore, the property manager had no actual legal right of entry. The test, however, is whether the Secret Service agents had a reasonable, good faith basis to rely on Moses's assertions that he had a legal right of entry. Illinois v. Rodriquez, 497 U.S. at 182-89. The district court held that they did and we agree