**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Dean A. LAMBEY, Defendant–Appellant.**

**No. 90–5619.**

United States Court of Appeals, Fourth Circuit.

Argued April 7, 1992.

Decided Sept. 2, 1992.

As Amended Oct. 27, 1992.

Conrad Charles Lewane, Sr., Richmond, Va., argued, for defendant-appellant.

Stephen Wiley Miller, Asst. U.S. Atty., Richmond, Va., argued, (Richard Cullen, U.S. Atty., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, WILKINSON, WILKINS, NIEMEYER, HAMILTON, LUTTIG and WILLIAMS, Circuit Judges.

OPINION

**NIEMEYER, Circuit Judge:**

Dean A. Lambey pled guilty to a two-count information charging him in Count I with conspiracy to kidnap a minor in violation of 18 U.S.C. § 1201(c) and in Count II with using an interstate computer facility to publish notices and advertisements to produce child pornography and to engage in sexually explicit conduct with minors in violation of 18 U.S.C. § 2251(c). Two weeks after the district court accepted the guilty plea following a Rule 11 hearing, but before sentencing, Lambey moved to withdraw the plea, contending that his attorney had erred in estimating his sentence and that, if had he been advised of the correct sentencing range, he would have demanded a trial. The district court denied the motion and sentenced Lambey to 360 months in prison on the conspiracy count and 120 months on the pornography count, the terms to run concurrently.

Lambey contends on appeal that the district court erred in refusing to grant his motion to withdraw his guilty plea and in failing to advise him pursuant to Fed. R.Crim.P. 11(e)(2) that he could not withdraw his plea once it was given to the court. The issues were argued before a panel of this Court which affirmed the district court. 949 F.2d 133 (4th Cir.1991). The Court en banc thereafter granted Lambey's petition for rehearing, ordering that the earlier panel opinion be vacated and the case reheard by the Court en banc.

On rehearing Lambey again presents the points argued to the panel and, on the invitation of the Court to argue whether the district court properly applied the Sentencing Guidelines, contends alternatively that the district court erred in applying the Sentencing Guidelines. In his supplemental brief Lambey contends that, properly applied, the Sentencing Guidelines direct that the sentencing range on Count I be 63–78 months and on Count II, 41–51 months.

Finding no reversible error, we affirm.

**I**

In February 1989, as part of an investigation to uncover child pornographers, Officer James Rodrigues, Jr., of the San Jose, California Police Department, placed an announcement with a computerized bulletin board service. In the announcement, Rodrigues, using an alias, identified himself as a bisexual pedophile and requested others with similar interests to contact him. Lambey responded to the announcement with his own announcement which stated, "Your message caught my interest. Think we may have something in common but need to explore more. Want to talk?? P.S. I like REAL youngsters!!" This began a protracted series of communications between Rodrigues and Lambey which revealed a plot by Lambey and another individual, Daniel T. DePew, to buy or kidnap a male child, film him engaging in sexual activities, murder him on film, and sell copies of the "snuff film" to interested buyers. In the course of their communications through the computer network and later by telephone and in person, Rodrigues and another undercover officer witnessed Lambey and DePew discussing and plotting the kidnapping, sexual assault, and murder of a child. Lambey undertook specific responsibility for obtaining a rental van for the kidnapping and video equipment and tapes for the filming, and he suggested that his home in Richmond, Virginia, be used as the location for the crime. In August 1989, Lambey telephoned Officer Rodrigues to tell him that he, Lambey, had spotted a child who appeared to be about 13 years old riding his bicycle in an industrial area of Richmond. When Lambey indicated his plan that this child be the victim, Lambey was arrested.

Retained counsel negotiated and Lambey agreed to a plea agreement. According to Lambey, while discussing the plea agreement with him, his counsel said that he "felt" the case would fall into the sentencing range defined by levels 27 to 29 of the Sentencing Guidelines, providing for a sentence of "somewhere between 70–108 months," but that he "could not predict" the specific sentence Lambey would receive. His counsel gave Lambey a copy of

the sentencing table from the Sentencing Guidelines Manual on which counsel had written the sentencing range for a § 1201(c) (conspiracy to kidnap) as "24–32 pts," providing for a range of 51–151 months, and he had circled levels 28–29 on the table providing for a range of 78–108 months. Testifying later at the hearing on Lambey's motion to withdraw his plea, Lambey's counsel stated that his sentence estimates were based on his best judgment after having consulted with other attorneys.

Lambey thereafter signed the plea agreement, which provided that any sentence was "within the sole discretion of the sentencing judge" and the district court has "jurisdiction and authority to impose any sentence within the statutory maximum set for [Lambey's] offense, including a sentence determined under the *Sentencing Guidelines.*" The plea agreement itself continued with a provision that no sentence had been determined and that any prediction was not binding on the court:

> The defendant is aware that his sentence has not yet been determined by the Court. He is also aware that *any estimate of the probable sentencing range that he may have received from counsel,* the government, or the probation office, *is a prediction, not a promise,* and is not binding on the government, the probation office, or the Court. Realizing the uncertainty in estimating what sentence he will ultimately receive, the defendant knowingly waives his right to appeal the sentence in exchange for the concessions made by the government in this agreement.

(Emphasis added).

At the hearing conducted pursuant to Fed.R.Crim.P. 11, Lambey testified that he had read and "fully understood all of the terms of the plea agreement" and that it represented the entire understanding between him and the government. After advising Lambey of the nature of the two counts with which he was charged, the district court advised him that he could receive a life sentence on Count I and ten years on Count II and that the sentences could be imposed consecutively. The court also stated, "[U]nder Guideline sentencing, no one can accurately predict what your sentence will be until such time as a presentence report has been made available to the Court." Finally, the court received the statement of Lambey's counsel that counsel, too, had advised Lambey of the unpredictability of his sentence "as recently as last evening."

After the Rule 11 hearing but prior to sentencing, Lambey's probation officer, after interviewing Lambey, tentatively "figured up the points" applicable for computing a sentencing guideline range. The probation officer advised Lambey that there was "a discrepancy between what [the officer] had tentatively figured and what [Lambey] was thinking."

Lambey promptly wrote a letter to the district court, stating, "The original pleas were ill advised, and made at a time of great stress," and a letter to his counsel requesting that a motion to withdraw his plea be filed because "my pleas of guilty were made under great emotional pressure, and ... I did not fully have time to previously give the actions the deliberation and consideration they were due." About a week later he wrote the court again, "I have been counseled and advised by Mr. Linka [his counsel] regarding this matter and have no desire to withdraw my plea at this time."

Counsel for Lambey nevertheless filed a motion to withdraw the plea on the grounds that Lambey was "subject to great deal of stress and not fully aware of the implications of such pleas." New counsel for Lambey thereafter amended the motion to withdraw the plea because Lambey had been advised by previous counsel that the offense level "would be either 28 or 29, thus a period of confinement would be between 78 months and 108 months."

Following a hearing at which testimony was received, the district court denied Lambey's motion to withdraw his plea. Lambey was subsequently sentenced to 360 months imprisonment on Count I and a concurrent 120 months on Count II.

## II

■ Lambey contends principally that his motion to withdraw his guilty plea should have been granted because his first attorney's erroneous estimate on the applicable sentencing guideline range constitutes a "fair and just reason" as used in Fed.R.Crim.P. 32(d) for withdrawal of the plea.* He contends that had he been properly advised on the applicable sentencing range, he would have gone to trial.

The government argues that Lambey's "unrealized expectations at sentencing" do not justify allowing him to withdraw his guilty plea. It relies on our decision in *United States v. DeFreitas,* 865 F.2d 80 (4th Cir.1989) (holding that DeFreitas could withdraw his plea based on conduct of counsel only if (1) counsel's performance "fell below an objective standard of reasonableness" and (2) he would not have pleaded guilty but for counsel's error). The government argues that counsel's advice was just a prediction given with all the admonitions of its potential variation from the actual sentence, and that giving erroneous estimates in this circumstance does not constitute ineffective assistance of counsel.

■ Rule 32(d) of the Federal Rules of Criminal Procedure, under which Lambey filed his motion to withdraw his plea, provides that the district court *may permit*

the withdrawal of a plea before sentencing if the defendant demonstrates a "fair and just reason." The decision to permit the defendant to withdraw a plea is discretionary, and our review is limited to the question of whether the district court abused its discretion.

Rule 32(d) was amended in 1983 to impose a more definite standard on presentence motions to withdraw pleas. Before the amendment, withdrawals of pleas were freely allowed unless the " 'prosecution [had] been substantially prejudiced by reliance upon the defendant's plea.' " *United States v. Strauss,* 563 F.2d 127, 130 (4th Cir.1977) (quoting 2 C. Wright, Federal Practice and Procedure § 528, at 474–75 (1969)); *see also, United States v. Savage,* 561 F.2d 554, 556 (4th Cir.1977). The permissive approach of these cases was rejected by the changes to Rule 32(d) and the institution of more formal proceedings for accepting pleas under Rule 11. *See United States v. Haley,* 784 F.2d 1218 (4th Cir. 1986). The Advisory Notes on the 1983 amendment to Rule 32 provide, in connection with the changes:

> Although that position [as stated in *Strauss* and *Savage* ] may once have been sound, this is no longer the case in light of the recent revisions of Rule 11.

---

* At oral argument appellate counsel, for Lambey, in response to the Court's invitation to address the Sentencing Guideline calculations, contended that the estimates of Lambey's first counsel were indeed correct and that the district court erred in applying the Sentencing Guidelines.

The district court began its analysis with U.S.S.G. § 2X1.1 because Lambey pled guilty to conspiracy to kidnap under 18 U.S.C. § 1201(c), a conspiracy for which no specific guideline applied. Section 2X1.1 refers to the guideline applicable to the object of the conspiracy, § 2A4.1 (kidnapping), and any adjustment therefrom for any intended conduct that can be established with reasonable certainty. The kidnapping guideline, in turn, substitutes the guideline for the offense the kidnapping was to facilitate, in this case § 2A1.1 (first degree murder). The resulting offense level, 43, was then reduced three levels under § 2X1.1(b)(2) because the murder was not in fact accomplished. Urging a different route, Lambey's appellate counsel argued that the guideline for conspiracy to murder, § 2A2.1 (§ 2A1.5 in the current version of the Sentencing Guidelines), which he argued

provides for a maximum offense level of 29, should be used, rather than pursuing the offense level through the kidnapping charge.

Recognizing that this argument would render moot Lambey's motion to withdraw his guilty plea because the motion is based on former counsel's *erroneous* estimate, appellate counsel for Lambey advanced this argument as an alternative position if Lambey is not allowed to withdraw his guilty plea.

Even though Lambey did not appeal the Sentencing Guideline calculation, we might be inclined to consider the Sentencing Guidelines issue if the district court committed plain error. *See United States v. Maxton,* 940 F.2d 103, 105 (4th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 398, 116 L.Ed.2d 347 (1991). However, because this same argument was rejected in connection with the sentence of Lambey's co-conspirator, *see United States v. DePew,* 932 F.2d 324, 328–29 (4th Cir.1991), and Lambey's plea agreement contains clauses expressly waiving his right to appeal the sentence, we will not review the issue. *See United States v. Wiggins,* 905 F.2d 51, 54 (4th Cir.1990).

**1394**

Rule 11 now provides for the placing of plea agreements on the record, for full inquiry into the voluntariness of the plea, for detailed advice to the defendant concerning his rights and the consequences of his plea and a determination that the defendant understands these matters, and for the determination of the accuracy of the plea. Given the great care with which pleas are taken under this revised Rule 11, there is no reason to view pleas so taken as merely "tentative," subject to withdrawal before sentence whenever the government cannot establish prejudice.

Advisory Committee Notes on the 1983 Amendment to Fed.R.Crim.P. 32, 18 U.S.C.App., p. 800 (1988).

 Accordingly, a "fair and just" reason for withdrawing a plea is one that essentially challenges either the fairness of the Rule 11 proceeding wherein the defendant tendered, and the court accepted, the plea or the fulfillment of a promise or condition emanating from the proceeding. What happens or is told the defendant before the hearing and induces the defendant not to change his plea at the hearing may be relevant to the analysis under Rule 32(d). If, however, at the Rule 11 hearing, the court specifically warns the defendant of possible results different from those he anticipated because of the prior event or advice, then the defendant bears a heavy burden when attempting to demonstrate that the prior event or advice should form the basis of a fair and just reason for a later withdrawal of his plea. If an appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice system can rely, it must be recognized to raise a strong presumption that the plea is final and binding.

In *DeFreitas* the defendant sought to withdraw a guilty plea on the basis that he was improperly advised on law and fact by his counsel and therefore his plea was not freely and voluntarily tendered. Counsel allegedly failed to advise DeFreitas on elements of proof in which the United States had the burden and on the vulnerability of a government witness. He also failed to advise DeFreitas that he might be subject to deportation if he pleaded guilty. Because the advice and conduct of counsel, even when coupled with other alleged acts of misfeasance, did not fall below an objective standard of reasonableness, we concluded that a "fair and just" reason for withdrawal of the plea had not been established:

DeFreitas may withdraw his plea only if he makes two showings: (1) that his counsel's performance "fell below an objective standard of reasonableness" and (2) that he was prejudiced in the sense that "there [was] a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial."

865 F.2d at 82 (quoting *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985)).

 In the present case Lambey raises no objection to what occurred in the Rule 11 hearing or to the accuracy and adequacy of the information presented to him there. The reason he advances for withdrawing his guilty plea does not bear on whether he was in fact guilty. He has suggested no confusion about the nature of the charges, the defenses to them, or their applicability to his factual circumstances to satisfy a finding of guilt. Moreover, he suggests no error in the court's advice to him on what he could receive by way of a sentence. He contends simply that he believed he would receive a shorter sentence than that outlined by the court because of discussions with his attorney which took place prior to the Rule 11 proceeding.

The undisputed facts reveal that the attorney discussions, relied on by Lambey, involved estimates which Lambey knew were only predictions. Thus the very advice received by Lambey informed him that his plea was not being given for a specific sentence or sentence range, but rather that the sentence would be determined by the court. Lambey again acknowledged advice not to rely on his attorney's estimates in the written plea agreement and was yet again given such advice by the district court at the Rule 11 hearing. Little more

could have been said to warn Lambey about the potential vagaries of sentencing.

While we accept Lambey's claim that, notwithstanding the admonitions not to expect a particular sentence range, he did not expect to be susceptible to such a large variation from the estimates he was given, we must also accept his statements at the Rule 11 hearing that he was aware that no sentence had yet been determined and that he could receive a sentence up to life imprisonment. He testified he was aware that any predictions as to a sentence were not binding on the court, and he acknowledged that no promises or understandings, other than as contained in the plea agreement, induced his guilty plea. Statements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a sentencing court in accepting a plea "constitute a formidable barrier" to attacking the plea. *Cf. Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S.Ct. 1621, 1628–1629, 52 L.Ed.2d 136 (1977).

We do not rule out the possibility that a defendant's misapprehension of a likely sentence, based on a clear error in the advice given him, can be a fair and just reason for withdrawal of a guilty plea if it is not corrected by the court at the Rule 11 hearing. Yet if the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant.

It is argued that while a minor error by an attorney in estimating a sentence might fail as a just reason for withdrawal of a plea, when the variation between the actual sentencing range and the estimate is as significant as presented here, we leave the realm of reasonable estimating, raising a question about the competency of counsel. As opposed to a "pure guess," estimation, it is argued, is a form of advice for which there is an objective standard of reasonableness below which an attorney's conduct should not fall. *See United States v. De-Freitas*, 865 F.2d at 82 (holding that a plea may be withdrawn when the defendant shows that "counsel's performance 'fell below an objective standard of reasonableness'" and that but for the error, defendant would probably have insisted on a trial) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 369 (1985)); *cf. Via v. Superintendent, Powhatan Correctional Ctr.*, 643 F.2d 167, 171 (4th Cir.1981) (to attack "the voluntary and intelligent character" of a guilty plea, the defendant must show that the advice received was not "within the range of competence demanded of attorneys in criminal cases").

Other than the significant discrepancy between the sentencing range estimated by Lambey's attorney and the range actually applied, however, the record reveals no evidence of incompetence. On the contrary, counsel for Lambey had attended training courses on the Sentencing Guidelines and had consulted with other attorneys before giving his estimate. Also telling, the attorney representing Lambey before this Court, who is different from the counsel who made the estimate for Lambey, urges by way of alternative argument on appeal that the estimate was correct and the sentencing court applied the wrong guidelines range. Finally, the same method of calculation was also urged as a ground for appeal to reverse the sentence of Lambey's co-conspirator, DePew. *See DePew*, 932 F.2d at 328–30. Calculating the sentence for conspiracy to kidnap when one of the objects of the conspiracy was murder requires passing through several sections of the Sentencing Guidelines, from § 2X1.1 to § 2A4.1 to § 2A1.1 and finally to § 2X1.1(b)(2). *See supra*, note 1. It is not unreasonable to argue that the section applicable to conspiracy to murder, § 2A2.1 (§ 2A1.5 in the current version of the Sentencing Guidelines), should simply be followed instead. More importantly, it was not unreasonable for Lambey's counsel to have made an estimate on that basis. It is precisely because of the complexity in the application of the Sentencing Guidelines that Lambey was warned not to rely on estimates. Indeed, his plea agreement included acceptance by him of an open sen-

tence, to be determined by the court later. Had he required agreement on a specific sentence or sentence range, a plea agreement pursued under Fed.R.Crim.P. 11(e)(1)(C) would have allowed the possibility.

In the circumstances presented here, where reasonable estimates of Lambey's attorney were announced as only estimates on which Lambey could not rely and the court clearly and correctly pointed out to Lambey at the Rule 11 proceeding that he could receive a life sentence, we conclude that the court did not abuse its discretion in rejecting his misapprehension as a fair and just reason to withdraw his guilty plea under Fed.R.Crim.P. 32(d). *See United States v. McHan*, 920 F.2d 244, 246–47 (4th Cir.1990) (no abuse of discretion to deny motion to withdraw guilty plea based on attorney's failure to inform defendant that the government might use the plea against him in a future case).

### III

Lambey also argues that his sentence should be vacated because at the Rule 11 hearing the district court failed, pursuant to Fed.R.Crim.P. 11(e)(2), to inform him that once he pled guilty he could not withdraw the plea. His argument is based on the incorrect premise that Rule 11(e)(2) applies in these circumstances.

Rule 11(e)(2) reads in relevant part: If the [plea] agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea.

Rule 11(e)(1)(B), to which Rule 11(e)(2) refers, describes a plea agreement that includes an obligation of the government to make a sentencing recommendation or not to oppose a sentencing request made by the defendant. Rule 11(e)(1) reads:

(1) The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

\* \* \* \* \* \*

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court....

As the Advisory Notes to the 1979 amendment to Rule 11(e)(2) illustrate, a Rule 11(e)(1)(B) type agreement requires the special warning by the court whereas other types of agreements do not: "Because a type (B) agreement is distinguishable from the others in that it involves only a recommendation or request not binding upon the court, it is important that the defendant be aware that this is the nature of the agreement into which he has entered." Advisory Committee Notes on the 1979 Amendment to Fed.R.Crim.P. 11, 18 U.S.C.App., p. 745 (1988).

Since there was no agreement by the government in this case to recommend a specific sentence or to refrain from opposing a sentence recommendation by Lambey, Rule 11(e)(2) was not applicable and there was no requirement that the district court inform Lambey that once he pled guilty he could not withdraw the plea.

For the reasons stated, therefore, we affirm the judgment of the district court.

*AFFIRMED.*

MURNAGHAN, Circuit Judge, dissenting:

While I concur in the majority's opinion insofar as it holds that the district court did not err in denying Lambey's motion to withdraw his plea, I write separately to dissent from the majority's resolution of the Sentencing Guidelines issue raised *sua sponte* by the court. Because I believe that the rule of lenity prevents us from interpreting the Guidelines so as to apply the guideline for fully executed first de-

gree murder and circumvent the specific guideline for a conspiracy to murder (which was planned but not effectuated), I would remand for resentencing.

## I.

Although Lambey did not appeal the district court's calculation of his sentence,[1] the issue had been raised on appeal by members of the bench who were concerned that the district court may have erred in using the guideline for first degree murder when a separate guideline for conspiracy to murder exists. Lambey's failure to raise the issue on appeal does not prevent us from considering an issue that involves a fundamental or plain error. Fed.R.Crim. Proc. 52(b) (plain error "affecting substantial rights may be noticed although not brought to the attention of the court"); *Silber v. United States*, 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962); *United States v. Pineda–Ortuno*, 952 F.2d 98, 105 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 1990, 118 L.Ed.2d 587 (1992); *United States v. Belanger*, 936 F.2d 916, 920 (7th Cir.1991). Plain error should only be found "in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)). Imposition for a term of imprisonment based on an erroneous computation of the Guidelines that arrives at a sentencing range wholly and extensively above that which is properly applicable is unquestionably a "miscarriage of justice." *See United States v. Smith*, 919 F.2d 123, 124 (10th Cir.1990) ("basing a sentence on the wrong Guideline range constitutes a fundamental error affecting substantial rights within the meaning of Rule 52(b)").

The majority states that "we might be inclined to consider the Sentencing Guidelines issue if the district court committed plain error."[2] Maj. op. at 1393 n. *. I depart from the majority in that I believe plain error has been committed: the ambiguity as to whether the guideline for first degree murder may be applied to a conspiracy to murder must be resolved by resorting to the rule of lenity.

## II.

The rule of lenity requires us to resolve ambiguities that remain in criminal stat-

---

**1.** Lambey's first attorney filed objections with the probation officer regarding the calculation of the Guidelines, which included an objection to use of the base offense level for murder in the first degree. The attorney who represented Lambey at the sentencing hearing raised the same argument before the district court.

**2.** The majority then states that "we will not review the issue" because a panel of the Fourth Circuit rejected the same Sentencing Guidelines argument in an appeal brought by Lambey's co-conspirator Daniel DePew, *see United States v. DePew*, 932 F.2d 324, 328–30 (4th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 210, 116 L.Ed.2d 169 (1991), and because Lambey entered a plea agreement in which he expressly waived his right to appeal the sentence. Maj. op. at 1393 n. * (citing *United States v. Wiggins*, 905 F.2d 51, 54 (4th Cir.1990). Neither reason should constrain our *en banc* review of the issue if, in fact, the commission of plain error is indicated.

Sitting as an *en banc* court, we are not bound by the prior Fourth Circuit opinion in *DePew*. *See Capital Produce Co. v. United States*, 930 F.2d 1077, 1079 (4th Cir.1991). In addition, the district court did not rely on *DePew*, because Lambey was sentenced over ten months before that panel heard oral argument. Thus, I cannot agree that the panel opinion in *DePew* should be a hindrance to our consideration of the issue.

The plea agreement in which Lambey waived his right to appeal the sentence also should not cause us to hesitate to investigate if we suspect that the Guidelines were applied erroneously. *Wiggins*, in which the panel dismissed an appeal because the defendant had entered a plea agreement containing an express waiver of his right to appeal the sentence, is inapplicable to the instant circumstances. The sole issue on appeal in *Wiggins* was the district court's application of the Sentencing Guidelines. *Wiggins*, 905 F.2d at 52. Here, however, we have raised *sua sponte* the question of the proper application of the Guidelines in the context of our *en banc* consideration of the related plea withdrawal question. Prior to oral argument, we *sua sponte* invited the parties to submit supplemental briefs addressing the issue of whether the Guidelines were properly applied.

Even more importantly, it is unacceptable for the government to secure, and the district court to be ratified with respect to, a criminal sentence that is plainly and not insignificantly in error under the Sentencing Guidelines.

utes by adopting the construction that is more lenient. *United States v. Batchelder*, 442 U.S. 114, 121, 99 S.Ct. 2198, 2202, 60 L.Ed.2d 755 (1979). "[T]his principle of statutory construction applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). Although called "Guidelines," the product of the United States Sentencing Commission is "binding on the courts," *Mistretta v. United States*, 488 U.S. 361, 367, 109 S.Ct. 647, 652, 102 L.Ed.2d 714 (1989) (citing 18 U.S.C. § 3553), and thus the Guidelines "have the force and effect of laws ...," *id.* at 413, 109 S.Ct. at 675 (Scalia, J., dissenting). Therefore, the rule of lenity is also appropriately used to resolve ambiguities in the Sentencing Guidelines. *See United States v. Mobley*, 956 F.2d 450, 452 (3d Cir.1992); *United States v. Payne*, 952 F.2d 827, 830 (4th Cir.1991); *United States v. Martinez*, 946 F.2d 100, 102 (9th Cir. 1991); *United States v. Rolande–Gabriel*, 938 F.2d 1231, 1237 (11th Cir.1991); *United States v. Burke*, 888 F.2d 862, 866 (D.C.Cir. 1989).

Obviously, we are not to create an ambiguity to avoid the plain meaning of a guideline. *See Bifulco*, 447 U.S. at 387, 100 S.Ct. at 2252; *Mobley*, 956 F.2d at 453 (refusing "to find ambiguity where none exists to defeat the plain meaning of the Guidelines"). As a principle of statutory construction, the rule of lenity is reserved for situations in which a "grievous ambiguity or uncertainty in the language and structure" of a statute remains after using other standard tools of statutory construction. *Chapman v. United States*, — U.S. —, —, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991) (quoting *Huddleston v. United States*, 415 U.S. 814, 831, 94 S.Ct. 1262, 1271, 39 L.Ed.2d 782 (1974)). The critical question, though, is what degree of ambiguousness is necessary in any particular case to comprise ambiguity. *Moskal v. United States*, 498 U.S. 103, —, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990). The Supreme Court has stated that if two readings of a criminal statute are "rational,"

*McNally v. United States*, 483 U.S. 350, 359, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987), or "plausible," it is appropriate to require "clear and definite" language before choosing the harsher alternative. *Williams v. United States*, 458 U.S. 279, 290, 102 S.Ct. 3088, 3094, 73 L.Ed.2d 767 (1982).

The Supreme Court has identified two purposes underlying the use of the rule of lenity as a "time-honored interpretative guideline" when two readings of a criminal statute are plausible and one reading produces a result that is more harsh. *Liparota v. United States*, 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985). The rule "serves to ensure both that there is fair warning of the boundaries of criminal conduct and that legislatures, not courts, define criminal liability." *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990) (citing *Liparota*, 471 U.S. at 427, 105 S.Ct. at 2089). Great emphasis is placed on the importance of issuing a "fair warning ... to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931), *quoted in United States v. R.L.C.*, — U.S. —, —, 112 S.Ct. 1329, 1340, 117 L.Ed.2d 559 (1992) (Scalia, J., concurring in part and concurring in the judgment) and *cited in id.* — U.S. at — n. 6, 112 S.Ct. at 1338 n. 6 (Souter, J., plurality opinion). It may be true that "the proposition that ... [criminal statutes] give adequate notice to the citizen is something of a fiction ...," albeit a "necessary fiction." *R.L.C.*, — U.S. at —, 112 S.Ct. at 1339 (Scalia, J., concurring in part and concurring in the judgment). However, the importance of providing "fair warning" as to the meaning of mandatory criminal sentencing "guidelines," which are, in effect, statutes, is not at all a fiction to those who must decide whether to plead guilty or to stand trial based on reasonable interpretations of the Sentencing Guidelines made by their attor-

neys. Indeed, one of the expectations of the Sentencing Commission was that the Guidelines would "have a positive, rationalizing impact upon plea agreements ...," in part because they were intended to "create a clear, definite expectation in respect to the sentence that a court will impose if a trial takes place." U.S.S.G. Ch. 1, Pt. A, intro. comment.

The majority has acknowledged the "complexity" here involved in interpreting the Guidelines so as to arrive at the guideline for an accomplished first degree murder by means of U.S.S.G. § 2A4.1(b)(5) in the process of sentencing a conspiracy to kidnap and murder. Maj. op. at 1395–96. The majority also states that it is "not unreasonable to argue" that the guideline for a conspiracy to murder is applicable instead. *Id.* I object to an interpretation of the Sentencing Guidelines that calls for substitution of the guideline provided for an accomplished first degree murder in sentencing for a conspiracy to murder through application of the kidnapping guideline. To me, that is flatly inconsistent with the requirement established by the general conspiracy guideline, U.S.S.G. § 2X1.1(c), which directs us to use the guideline that expressly covers a conspiracy to commit a particular offense, here murder, if such a guideline exists. I would hold that there is a "grievous ambiguity or uncertainty in the language and structure" of the Guidelines, *Chapman,* —— U.S. at ——, 111 S.Ct. at 1926 (quoting *Huddleston,* 415 U.S. at 831, 94 S.Ct. at 1271), that requires adoption of the more lenient interpretation.

3. Unless otherwise stated, reference is made to the version of the Guidelines that was current at the time of sentencing, which incorporated amendments that became effective November 1, 1989.

4. U.S.S.G. § 2X1.1, entitled "Attempt, Solicitation or Conspiracy (Not Covered by a Specific Offense Guideline)," provides, in part:
 (a) Base Offense Level: The base offense level from the guideline for the object offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.
 \* \* \* \* \* \*
 (c) Cross Reference

## III.

The district court, in accordance with the probation officer's presentence report, sentenced Lambey as follows. The district court began its analysis with the general guideline for a conspiracy, U.S.S.G. § 2X1.1, which provides for use of the base offense level "from the guideline for the object offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty," U.S.S.G. § 2X1.1(a) (Nov. 1989),[3] in sentencing for a conspiracy that is not "expressly covered by another offense guideline section," U.S.S.G. § 2X1.1(c).[4] The district court determined that the "object offense" in Lambey's case was conspiracy to kidnap in violation of 18 U.S.C. § 1201(c), since that is the offense charged in Count I of the indictment and is the offense to which Lambey pled guilty.[5] Because there is no guideline section expressly covering a conspiracy to kidnap, the district court turned to the guideline for the "object offense" of kidnapping, found at U.S.S.G. § 2A4.1 (Kidnapping, Abduction, Unlawful Restraint). Kidnapping was, however, only contemplated and never actually occurred.

Next, in applying the kidnapping guideline, which provides for a base offense level of 24, the district court heeded the instruction in U.S.S.G. § 2X1.1(a) to add "any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." On that basis, the following "specific offense characteristic" was applied:

 (1) When an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section.

5. The presentence report proposed that Count II, violation of 18 U.S.C. § 2251(c), should be grouped with Count I under § 3D1.2(a) and (b). The district court grouped the two counts together in calculating the sentencing range. The propriety of that decision is not herein addressed.

If the victim was kidnapped, abducted, or unlawfully restrained to facilitate the commission of another offense: (A) increase by 4 levels; or (B) if the result of applying this guideline is less than that resulting from application of the guideline for such other offense, apply the guideline for such other offense.

U.S.S.G. § 2A4.1(b)(5).[6] A finding in Lambey's case was made that the conspiracy to kidnap was "to facilitate the commission of" the other offenses of sexual abuse and murder. Sentencing on the basis of either sexual abuse or kidnapping would result in a lower offense level than the 43 levels provided by U.S.S.G. § 2A1.1 for the commission of first degree murder. Therefore, the guideline section covering first degree murder was used by the district court, pursuant to § 2A4.1(b)(5)(B). Returning to the general conspiracy guideline, § 2X1.1, the offense level of 43 was then reduced by three levels to 40, pursuant to § 2X1.1(b)(2),[7] because the defendant was apprehended before completion of the acts believed necessary to commit the object offense.[8]

### IV.

I conclude that application of the supposed "plain language" of § 2A4.1(b)(5) to arrive at the first degree murder guideline both contradicts and circumvents the "plain language" of the instruction given in § 2X1.1(c) that we should apply the guideline expressly covering a conspiracy if one exists. To my mind, § 2X1.1(c) prevents the substitution of the guideline for a completed first degree murder because of the separate guideline expressly covering a conspiracy to murder.

The issue can be stated as follows: is § 2X1.1(c) only to be invoked as the first step in the chain, i.e., requiring us to begin analysis with the kidnapping guideline since there is no specific guideline for a conspiracy to kidnap, but having no other impact on determination of the offense level for a conspiracy to kidnap, or, instead, does it apply to the entire analysis that we conduct under § 2X1.1? Both the panel in *DePew* and the district court that sentenced Lambey appear to have considered § 2X1.1(c), instructing us to use the guideline that expressly covers a conspiracy if one exists, to be relevant only at the start of the analysis. Under that interpretation, once we follow the direction to use the guideline for the "object offense" because a specific guideline for a conspiracy to commit that offense has not been provided, we simply ignore any guidelines that expressly cover a conspiracy even if we are directed to *substitute* another guideline, as happens in § 2A4.1(b)(5). It seems to me at least equally reasonable to conclude that § 2X1.1(c) applies to the entire calculation under § 2X1.1, and thus prevents the substitution of a guideline for any object of-

---

**6.** An amendment that took effect on November 1, 1991 (over 20 months after the district court sentenced Lambey) deleted U.S.S.G. § 2A4.1(b)(5) and inserted a new version at § 2A4.1(b)(7). *See* U.S.S.G.App. C, amdmt. 363. The analysis adopted in *DePew* and by the district court in sentencing Lambey is not affected by the changes. The comments here, therefore, are pertinent to the new provision.

**7.** U.S.S.G. § 2X1.1(b)(2) provides:
If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

The panel in *DePew* stated that the district court had reduced the base offense level by three levels "pursuant to § 2X1.1(b)(1) because the crime was an attempt and was not successfully completed." *DePew*, 932 F.2d at 329. In sentencing Lambey, the district court decreased the offense level by three levels not because the offense was an attempt, but because the offense was a conspiracy.

**8.** The district court added two levels under § 3A1.1, based on a finding that the intended victim was particularly vulnerable, resulting in an offense level of 42. With a criminal history category of I, the guideline range provided by the sentencing table is 360 months to life imprisonment. Lambey was sentenced to 360 months (i.e., 30 years) imprisonment on Count I.

fense if a guideline expressly covering a conspiracy to commit that offense is provided.[9]

While U.S.S.G. § 2X1.1(a) alludes to the application of adjustments "for any intended offense conduct that can be established with reasonable certainty," it is to be expected that confusion would arise from that language in the minds of defendants and their counsel as to whether U.S.S.G. § 2A4.1(b)(5) is intended to apply only to a kidnapping in actual fact or whether it magically broadens to reach merely contemplated but never effectuated kidnapping as well. Notably, the "plain language" of the guideline is written for and limited in its application to a kidnapping, abduction, or unlawful restraint that is actually committed. Thus, to enable logical application of U.S.S.G. § 2A4.1(b)(5) to a conspiracy to kidnap, the insertion of sufficient words extending it to contemplated but not executed crimes is required: "if [the conspiracy had been completed and] the victim [would have been] kidnapped, abducted, or unlawfully restrained to facilitate the commission of another offense...." Insertion of the words is based on the instruction back in U.S.S.G. § 2X1.1(a) to apply any "adjustments" that "can be established with reasonable certainty." Yet here, insertion of the words necessary to apply § 2A4.1(b)(5) in the instant circumstances also requires the assumption that the instruction in U.S.S.G. § 2X1.1(a) to apply any *"adjustments* from such guideline for any intended offense conduct" (emphasis supplied), means to apply a "specific offense characteristic" that calls for the *substitution* of another offense guideline. Substitution of the offense guideline for the object offense of murder, when the offense in reality is a conspiracy to murder, is not necessarily intended by the instruction in § 2X1.1(a) to apply "adjustments" from the guideline for the object offense, given that § 2X1.1(c) instructs us to apply the guideline that expressly covers a conspiracy if one exists.

The Sentencing Commission distinguished drastically between the offense level for a conspiracy to murder and the offense level for the actual commission of first degree murder. In the absence of a guideline expressly covering a conspiracy to commit a particular object offense, only three levels differentiate the offense level for a conspired but uncompleted act from the offense level for actual commission of the underlying object offense. In the absence of a separate guideline for conspiracy to murder, use of the first degree murder guideline, with an offense level of 43, less three for a conspiracy, would result in an offense level of 40. In contrast, the Guidelines provided a base offense level for a conspiracy to murder of 20 levels. U.S.S.G. § 2A2.1.[10] At the time of sentencing, the sentencing range for an offense level of 20 was 33 to 41 months imprisonment,[11] whereas the sentencing range for an offense level of 40 was 292 to 365 months imprisonment.[12] Therefore, the separate conspiracy to murder guideline evinces a clear intent to set a sentencing range for a conspiracy to murder that is substantially lower than the sentencing range that would result if we used the

---

**9.** Additional support for considering § 2X1.1(c) as applicable to the whole calculation under § 2X1.1 is found in the point that, after calculating the offense level for the object offense of an unfinished conspiracy as if it were a *completed* act (*i.e.,* calculating kidnapping under § 2A4.1), based on § 2X1.1(a), we still must return to § 2X1.1(b) for the instruction to deduct three levels for an *uncompleted* conspiracy. Returning to § 2X1.1(c) for the instruction that a conspiracy expressly covered by another guideline requires application of that specific guideline, at any point in the process of calculating the offense level for a conspiracy, is a reasonable interpretation of the overall structure of U.S.S.G. § 2X1.1. Furthermore, although we are required, pursuant to U.S.S.G. § 1B1.5, to apply the entire guideline for the object offense

"[u]nless otherwise expressly indicated," U.S.S.G. § 2X1.1(c) can be understood as having "expressly indicated" that the guideline for the actual, completed offense is not to be applied if a guideline for the conspiracy to commit that offense exists.

**10.** The guideline for conspiracy to murder is now located at U.S.S.G. § 2A1.5, and provides for a base offense level of 28.

**11.** The base offense level of 28 now provided for a conspiracy to murder results in a sentencing range of 78 to 97 months.

**12.** Both are based on the criminal history category applied to Lambey, category I.

actually effectuated first degree murder guideline and deducted three levels. I would require clear and definite language in the guidelines before permitting § 2A4.1(b)(5) to circumvent the Commission's unambiguous intent to set a far lower offense level for a conspiracy to murder than for an actual murder.

It may be argued that arrival at the guideline for an executed first degree murder in sentencing a conspiracy both to kidnap and murder is not inappropriate because a conspiracy to kidnap to facilitate the commission of murder is worse than either a conspiracy to kidnap or a conspiracy to murder. That argument is not sufficiently compelling to overcome what I perceive to be the plain direction in § 2X1.1(c) to apply the guideline that expressly covers a conspiracy if such a guideline is provided, particularly if one keeps in mind the vast difference between the offense level for accomplished first degree murder, less three offense levels for an uncompleted conspiracy, and the offense level specifically provided for a conspiracy to murder.

At the very least, I find the Sentencing Guidelines as applied to Lambey in the present case to be ambiguous [13] and uncertain as to whether the guideline for an accomplished first degree murder is applicable, given the existence of a guideline expressly covering a conspiracy to murder. In sum, I would apply the rule of lenity to require the less harsh alternative.

## V.

The error in using the first degree murder offense level with the three-level reduction for a conspiracy did some harm, though it probably did not harm Lambey as severely as it would harm a defendant who is sentenced on the basis of a conspiracy to kidnap and murder but not on the basis of a conspiracy to commit sexual abuse. The offense level applicable to Lambey, based on a conspiracy to commit criminal sexual

abuse, would likely be much higher than the offense level for either conspiracy to kidnap or conspiracy to murder, depending on which specific offense characteristics were found to be established with reasonable certainty, but it could not reach as high as that calculated by the district court. Lambey's sentence of 360 months for Count I was beyond the sentencing range that is applicable under the foregoing interpretation of the Guidelines. Because the sentence imposed was plainly erroneous, I would remand for resentencing. Consequently, I respectfully dissent.

WIDENER, Circuit Judge, dissenting:

Because I am of opinion that the facts surrounding Lambey's entry and attempted withdrawal of his guilty plea constitute a "fair and just reason" for such withdrawal, and that under these circumstances the district court abused its discretion in denying the motion under Federal Rule of Criminal Procedure 32(d), I respectfully dissent.

Lambey's trial counsel, while advising him to accept the government's offer of a plea agreement, badly misstated the range of years of confinement to prison to which Lambey would be subject under the Sentencing Guidelines.[1] Lambey's counsel erroneously informed him that a plea of guilty under the agreement would result in a sentence of between 78 and 108 months. In fact, Lambey's Guideline range of sentences was from 360 months to life, and he ultimately was sentenced to serve 360 months in prison, a term over three times longer than his counsel's estimated maximum.

Lambey first became aware of his attorney's error during a presentence interview with his probation officer, on December 4, 1989, five days after his guilty plea was entered, but before he was sentenced. Upon learning that he faced a substantially longer prison term than his attorney had

---

**13.** And so, I hazard to guess, would many, if not most, of those engaged in the practice of criminal law.

**1.** I think it clear that the district court correctly applied the Sentencing Guidelines in Lambey's

case, see maj. op. p. 1393, note *; *United States v. DePew*, 932 F.2d 324, 328–29 (4th Cir.1991), and that his trial counsel's estimate thus was grossly understated.

led him to believe, Lambey immediately dispatched letters to his attorney and to the district court asking that he be allowed to withdraw his guilty plea and be tried by a jury. In his letter to the court Lambey stated that his guilty pleas were "ill advised, and made at a time of great stress." Lambey's counsel followed up this letter by filing formal motions to withdraw the pleas. These motions fully explained the deficiencies of his counsel's earlier advice and the circumstances under which the pleas of guilty were entered. Prior to denying Lambey's motions and imposing sentence, the district court received testimony and heard argument regarding his counsel's erroneous advice. Lambey himself testified unequivocally that he would not have waived his right to trial by jury had he received proper advice regarding the range of prison terms that he faced. While the testimony of Lambey, of course, might be discounted, the other facts which are undisputed can not, and the district court was thus fully aware before sentencing of the circumstances surrounding Lambey's guilty pleas and of his desire to be tried by a jury.[2]

My objection to the majority decision lies in the application of the standard governing motions to withdraw pleas of guilty. Fed.R.Crim.P. 32(d) allows the district court to permit a defendant to withdraw a guilty plea before sentence is imposed "upon a showing by the defendant of any fair and just reason." Following our decision in *United States v. DeFrietas*, 865 F.2d 80 (4th Cir.1989), the majority would require a federal defendant seeking to withdraw his guilty plea before sentencing under Fed.R.Crim.P. 32(d) on the grounds of erroneous pre-plea legal advice to show that his attorney rendered constitutionally ineffective assistance under the stringent standard of *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), and

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). I submit that our decision in *DeFrietas* is flawed in that it applies an incorrect and unduly stringent legal standard to a federal defendant's attempt to withdraw a plea of guilty. I would overrule *DeFrietas* in favor of our more recent, and in my view correct, statement of the law in *United States v. Moore*, 931 F.2d 245 (4th Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991).

As the majority notes, in *DeFrietas* we stated that under Rule 32(d) a federal defendant may withdraw a plea of guilty on grounds of erroneous legal advice

> only if he makes two showings: (1) that his counsel's performance "fell below an objective standard of reasonableness" and (2) that he was prejudiced in the sense that "there [was] a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial."

*DeFrietas*, 865 F.2d at 82 (quoting *Hill v. Lockhart*, 474 U.S. at 57, 59, 106 S.Ct. at 369, 370).

The standard set out in *DeFrietas* is, of course, the familiar standard for determining when an attorney's performance is so inadequate as to constitute a violation of the defendant's Sixth Amendment right to counsel. In *Hill v. Lockhart*, upon which *DeFrietas* relied, the Court considered the appeal of a state prisoner from the federal courts' denial of his petition for a writ of habeas corpus. The petitioner in *Hill* sought relief from his state conviction on the grounds that his guilty plea, *i.e.*, his waiver of his constitutional right to trial by jury, was constitutionally infirm in that it was "involuntary as a result of ineffective assistance of counsel because his attorney supplied him with information about parole eligibility that was erroneous." *Hill*, 474

---

**2.** On December 29, 1989, nine days after the receipt of the first letter, the district court received from Lambey a second letter dated December 21, 1989, in which he stated that he had "no desire to withdraw [his] plea at this time." However, this letter is of no significant consequence in my view of this case. No one other than the district court received a copy of the letter or was even aware of its existence until the day of the sentencing hearing, February 13, 1990. Notwithstanding Lambey's second letter to the court, his motion to withdraw his plea was properly made or renewed by formal motion on February 12, 1990. The import of the February 12th motion can not be misunderstood.

U.S. at 56, 106 S.Ct. at 369. The Court held that this constitutional claim was governed by the Sixth Amendment ineffective assistance standard of *Strickland.* See 474 U.S. at 57, 106 S.Ct. at 369.

*DeFrietas,* in contrast, involved the direct appeal of a federal criminal defendant who had sought to withdraw a guilty plea under Rule 32(d). Despite this difference, we held that when the proffered "fair and just" reason for withdrawal is erroneous advice of counsel, a defendant must establish that his counsel's performance rose to the level of a Sixth Amendment violation. This, I submit, was error. When a federal defendant seeks to withdraw his plea, not on the grounds that the plea was a constitutionally infirm, involuntary waiver of the right to trial, but on the grounds that he has a "fair and just reason" to do so, the standard of *Hill* and *Strickland* is not implicated. Rather, the Federal Rules of Criminal Procedure can and do establish a more flexible and less rigorous standard for the withdrawal of guilty pleas before sentencing.

We recently set forth the correct analysis for identifying a "fair and just reason" under Rule 32(d) in *United States v. Moore, supra.* In *Moore* we stated that:

> Courts typically consider a variety of factors in determining whether a defendant has met his burden under Rule 32(d). The factors include (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

*Moore,* 931 F.2d at 248; see also C. Wright, *Federal Practice and Procedure: Criminal 2d* § 538 (1982, 1992 Supp.). Applying

this analysis, I would hold that the district court abused its discretion in refusing to permit Lambey to withdraw his plea.

I am of opinion that all but one of the factors identified in *Moore* strongly favor Lambey's argument that he established a fair and just reason for withdrawal of his plea.[3] As to the first factor I consider, one that in this case is closely related to the fourth factor in *Moore,* I am of opinion that Lambey's grossly erroneous conception of the imprisonment range that he was facing effectively rendered his plea unknowing and involuntary. Cf. *Hoffman v. Leeke,* 903 F.2d 280, 289 (4th Cir.1990) ("A defendant cannot knowingly and intelligently waive what he does not know.").

Second, the time lapse between the entry of his guilty plea and his motion to withdraw was negligible under the circumstances. Despite some later confusion and indecision on Lambey's part, see note 2, *supra,* his initial motion to withdraw came only 22 days after his guilty plea. More importantly, Lambey made his motion immediately upon learning from his probation officer of his counsel's mistake; clearly, then, the motion cannot be said to have been made for strategic or dilatory purposes.

Third, and most crucial in this case, the advice Lambey received from his counsel as to the consequences of waiving his right to trial was so erroneous and inadequate that he could not have made an informed decision. In my view this factor alone, on the facts of this case, is very nearly dispositive of the whole question. In this regard I cannot accept the majority's suggestion that the admittedly complex nature of the Sentencing Guidelines should relieve Lambey's counsel from his obligation to provide him with a sufficiently accurate estimate of the consequences associated with the waiver of the most central right in our criminal justice system, that of trial at all and especially trial by jury. If the Guidelines are indeed so complex that we cannot expect lawyers consistently to provide reasonably

---

**3.** Only the second factor militates against Lambey; thus far he has offered no credible argument of innocence to the offenses charged.

accurate estimates, it is my opinion that defendants should not as a matter of course be made to bear the burden of that complexity.

Fourth, had the district court permitted Lambey to withdraw his plea, the government has made no suggestion that it would have been prejudiced in the least. Again, Lambey entered his plea on November 29, 1989, and his motion to withdraw the plea was first received by the district court on December 20, 1989. Absent any evidence of extraordinary intervening events, it appears that the government's ability to prosecute Lambey would not have been impaired in any way by allowing withdrawal only a matter of weeks after the execution of the plea agreement.

Finally, allowing the withdrawal would not have resulted in any inordinate inconvenience to the court or a waste of judicial resources. Certainly the withdrawal of the plea results in a waste of the Rule 11 hearing at which the plea was accepted. However, given the importance of the rights involved, the resources expended in that relatively brief proceeding can hardly be said to weigh against an otherwise proper withdrawal. In sum, I am of opinion that the *Moore* standards were so clearly satisfied in this case that the refusal to allow withdrawal constituted an abuse of discretion.

In the ordinary case in which a defendant attempts to withdraw a plea of guilty on the grounds that he was mistaken as to the consequences of the plea or of the legal rights waived by the plea, the fact that the plea was accepted only after a properly-conducted Rule 11 hearing may well fore-

close withdrawal of the plea. I submit, however, that this is far from an ordinary case and is one in which the effect of the Rule 11 colloquy should not be so broad. I would treat the content and effect of the Rule 11 inquiry as merely another, though particularly important, factor in the withdrawal analysis set out above.

The majority insists that the district court's statements to Lambey at the Rule 11 hearing sufficiently warned him that his counsel's estimates were not to be relied upon. Maj. op. at 1394–1395. While it is true that the district court in a general manner informed Lambey that "no one ... [could] accurately predict" his sentence, the court simply did not inquire with any specificity into whether Lambey's counsel had made any estimates. It is also incorrect to suggest that the estimates of Lambey's attorney were announced as only estimates on which Lambey could not rely. A review of the entire transcript attending the plea of guilty, A. 87–101, indicates that the district judge did not mention the estimates of Lambey's attorney, neither did he state that any such estimate could not be relied upon.[4] Lambey later testified, and in his testimony he is corroborated by the documentary sentencing table given by him by his attorney, plaintiff's ex. II, A. 104, that his attorney erroneously had informed him that the maximum sentence of 360 months to life did not apply to him, and consequently Lambey was under the impression at the Rule 11 hearing that the court's admonition regarding that sentence did not apply to him. See A. 47. When an attorney's advice was so incorrect, as here, as to distort the defendant's entire understand-

---

4. The plea agreement itself, which Lambey signed, contains only warnings similar in their generality to those given by the district judge from the bench. That document provides, in relevant part:

> The defendant is aware that his sentence has not yet been determined by the Court. He is also aware that any estimate of the probable sentencing range that he may have received from counsel, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office, or the Court.

This language obviously was insufficient to put Lambey on notice that the specific estimates provided him by his attorney were grossly understated. This paragraph states only that estimates are not binding on the government, the probation office, or the court, and makes no attempt to suggest that such estimates cannot be relied upon by the defendant in deciding whether to waive his right to trial and plead guilty. The insertion of such boilerplate language simply is not a proper substitute for a searching inquiry by the district judge, when called upon as here, as to whether the defendant is laboring under a grave misunderstanding regarding the potential punishment that he faces.

ing of the significance of the Rule 11 colloquy, I would hold that the defendant is not thereby barred from withdrawing his plea.

It is of course true that the 1983 amendments to Fed.R.Crim.P. 32(d) have made the withdrawal of guilty pleas more difficult. However, this court wisely has heretofore avoided sweeping holdings that create unnecessarily inflexible rules regarding the circumstances under which a guilty plea may be withdrawn. Our desire to impart finality to criminal proceedings should not outweigh a defendant's right to be tried, and especially by jury, when that right was waived under circumstances such as those present here.

Lambey had no one to turn to except his attorney, unless the probation officer is counted. The attorney admittedly gave Lambey incorrect advice of great magnitude, which mistake obviously was caught by the probation officer. Immediately upon being advised of the mistake, Lambey asked to have his plea withdrawn. This act and the documentary corroboration of the mistake of his attorney established beyond a doubt his good faith. Moreover, there was nothing else that Lambey could do at the time except seek to withdraw his plea. The effect of the majority opinion is such that advice from the court as to the length of the maximum sentence "[a]nd that under guideline sentencing, no one can accurately predict what your sentence will be until such time as a presentence report has been made available to the court," A. 94, is to impose a per se rule, an impenetrable shield behind which the government can hide, and avoid even the great and admitted mistake of an attorney such as that which occurred here.

The Sentencing Guidelines, to put it mildly, have revolutionized sentencing. To construe them, however, as the majority does in this case, is to withdraw from the proceeding the element of fairness. I do not think they are meant to be construed, and neither is Rule 11 nor Rule 32, to uphold an ironclad requirement of pleading blind in the face of admittedly grossly erroneous advice of an attorney. That is the result obtained here.

Accordingly, I would vacate the judgment of the district court and remand for entry of a new plea to the offenses charged.

I am authorized to state that Circuit Judge SPROUSE joins in this opinion.

K.K. HALL, Circuit Judge, dissenting:

Dean Lambey conspired with Daniel Depew to kidnap a boy and to then sexually abuse and murder him in the process of making a "snuff" movie. For this he was sentenced to thirty years in prison. Even to talk of such awful crimes is abhorrent, but the extent of what occurred was just that, talk. If a defendant, instead of talking about kidnapping his intended victim, conspires to murder him, attempts to murder him, and inflicts permanent or life-threatening injuries, his guideline range would nevertheless be strikingly lower than the 360–life range applied to Lambey's conspiracy conviction.[1]

The majority acknowledges that counsel for Lambey had attended training courses on the sentencing guidelines and had consulted with other attorneys before giving his estimate as to the probable sentence. In my view, this estimate was based on the interpretation of the applicable guidelines that should have been used by the trial court. Instead, the trial court twisted and contorted the guidelines so as to impose a sentence far in excess of that justified by a fair reading of the guidelines.

Part III of Judge Murnaghan's dissent describes what was done in computing Lambey's sentence. In my view, the correct computation should have been as follows:

(1) Determine the offense guideline most applicable to the offense of conviction (conspiracy to kidnap). U.S.S.G. § 1B1.2(a).

---

1. A conspiracy and attempt to murder gives a base offense of 20, plus a 6–level increase for "permanent or life-threatening bodily injury." U.S.S.G. § 2A2.1(a), (b)(3)(C) (Nov. 1989). This translates (based on the same adjustments and criminal history score applied to Lambey) to a range of 78–97 months.

Inasmuch as no guideline expressly covers conspiracy to kidnap, § 2X1.1 directs the use of the provision for the object offense, i.e., kidnapping.

(2) The kidnapping guideline, § 2A4.1, prescribes a base level of 24, and § 2X1.1(b)(2) requires a decrease of three levels, to 21.

(3) Under "special offense characteristics," § 2A4.1(b)(5) states: "If the victim was kidnapped ... to facilitate the commission of another offense: (A) increase by 4 levels [yielding an offense level of 25]; or (B) if the result of applying this guideline is less than that resulting from application of the guideline for such other offense, apply the guideline for such other offense."

(4) Section 2X1.1(c) provides that "[w]hen a conspiracy is expressly covered by another offense guideline section, apply that guideline section." There did (and does) exist an offense guideline for 'conspiracy to murder' (§ 2A2.1, now found at § 2A1.5), one that would have yielded an offense level of only 20. Inasmuch as this is less than the level of 25 under § 2A4.1(b)(5)(A), it would not be used.[2]

(5) Applying the same adjustment as the district court (2 level increase under § 3A1.1, 'Vulnerable Victim') gives a total offense level of 27. With a criminal history score of I, the guideline range should have been 70–87 months.

If the guidelines are so ambiguous that several judges of a court of appeals would reach sentence ranges that differ by twenty years and more, an accused certainly should not be held to guess at his risk when contemplating a plea. I would vacate the sentence and remand for resentencing,[3] without foreclosing the possibility of a departure. However, in the event the Supreme Court should find the guidelines were properly applied, Lambey should, at

the very least, have the option of withdrawing his plea. With this qualification, I concur with Judge Widener's analysis of the plea withdrawal issue.

PHILLIPS, Circuit Judge, dissenting:

I agree with the essential points made in Judge Widener's dissenting opinion, and with the result that he would reach: a remand to allow withdrawal of the guilty plea and repleading. I write separately only because of disagreement with his view on the sentencing issue and its effect on the withdrawal issue.

First off, I agree that in assessing whether the district court erred in refusing to allow withdrawal of the plea because of counsel's mistaken advice, the proper question regarding counsel's mistake and its effect is whether it provided a "fair and just reason", per Fed.R.Crim.P. 32(d), for allowing withdrawal, rather than whether it amounted to constitutionally ineffective assistance of counsel under the much sterner test of *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). *See United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir.1989) (Rule 32(d) standard rather than constitutional standard appropriate in assessing withdrawal rulings in direct federal appeals); *United States v. Bennett*, 716 F.Supp. 1137 (N.D.Ind.1989), *aff'd* 907 F.2d 152 (7th Cir.1990) (less stringent Rule 32(d) standard controls). As Judge Widener notes, our decision in *United States v. DeFreitas*, 865 F.2d 80 (4th Cir.1989) is to the contrary, applying the constitutional standard in a direct federal appeal. He forthrightly says *DeFreitas* is wrong on this point and that we should overrule it. I agree.

I then agree with his persuasive demonstration that under Rule 32(d)'s more flexi-

---

**2.** By deducting three levels pursuant to § 2X1.1(b)(2), the majority acknowledges (as of course it must) that only a *conspiracy* to murder was involved. The use of § 2X1.1(b), however, ignores both the heading of the guideline ("Attempt, Solicitation, or Conspiracy (Not Covered by a Specific Offense Guideline)") as well as the express cross-reference in subsection (c).

**3.** I am not suggesting that 70–87 months is necessarily the correct range, only that it should be the end result if the route chosen by the district court to navigate through the guidelines is followed. Inasmuch as the plea stipulation establishes that the kidnapping was intended to facilitate the sexual abuse of the victim, U.S.S.G. § 2A3.1 would appear to yield an appreciably higher offense level than § 2A2.1 (Nov. 1989).

ble "fair and just reason" standard, the district court abused its discretion in not allowing withdrawal. But I do not agree that this turns on the fact that the sentence imposed was a proper one, hence defense counsel's advice a *real* mistake. In my view, it is enough that the lawyer's advice was so far wide of the position that the government took at sentencing—without regard to whether that position, which the sentencing court acted upon, was legally correct and counsel's position wrong. Indeed on this appeal in which the defendant, as appellant, raised only the withdrawal issue, I think we should not *sua sponte* have raised and addressed the issue whether the sentence imposed was legally correct. That should have been left for later resolution—either on an appeal from its reimposition if remand were ordered, or by a § 2255 proceeding if, as has occurred, the refusal to allow withdrawal were affirmed.

With the issue raised, however, I find the dissenting views of Judges Hall and Murnaghan—that the sentence was an illegal one—persuasive. At least to the point—which is enough for me—of demonstrating that confusion on the point between defense counsel and government counsel was understandable and that facing it for the first time on the eve of sentencing, with no way to know which was right, this defendant had a "fair and just reason" for being allowed to withdraw his plea and take his chances. He should have been given it.

In sum, I would find an abuse of discretion in the denial of defendant's motion for leave to withdraw, and would remand for repleading without addressing the issue of the legality of the sentence imposed.

Chief Judge ERVIN joins in this opinion.